TABITHA A. WATERS, *et al.,* *vs.* SAMUEL O. TAZEWELL, *et al.*

A deed of trust conveyed leasehold property for the "sole and separate use, benefit and behoof," of a *feme sole* "*her executors, administrators and assigns,*"

so that she might "either receive and take the clear rents, issues and income, or *proceeds* in case of sale," and apply them as she thought proper, "so that neither the *trust estate and property*, nor the rents, issues, income or *proceeds* thereof, should *at any time* be subject to the power, disposal or control of the present or any *future husband*," or be subject to his debts ; and in case of her death without a will, to such persons as would "take an estate in *fee-simple by descent* from her."    HELD:

That this deed carried the title to the property beyond the period of the wife's death, whether the last limitation be valid or void, and excludes the surviving husband from all claim thereto.

Under the limitation in a deed of trust of personalty for the benefit of a *feme covert*, in case of intestacy, "to such person or persons as would, by the existing laws of Maryland, take an estate in *fee-simple by descent* from her," the *surviving husband* has no claim.

An ultimate limitation either in favor of *next of kin* or *heirs at law* does not include a *husband*, unless there be some manifestation of an intention to include him.

A deed made by a *feme sole* in contemplation of marriage, securing her property to her separate use, is valid, when free from the imputation of fraud or concealment.

Such a deed followed by marriage, with previous *knowledge* on the part of the husband of its existence, will secure to the wife a separate estate in the property and bar the marital rights of the husband.

A deed conveying leasehold property in trust for the sole and separate use of a *feme covert*, contained a provision, that in case the husband should survive the wife, he and his assigns should have the rents, issues and profits, "during his natural life only, to and for his own use and benefit, *provided* he should continue unmarried after the death of his wife then living, and from and immediately after his decease" then over.    HELD :

That this *proviso* being a general restraint upon marriage by means of a condition subsequent, was void, and the husband's life-estate was not terminated by a second marriage.

Unqualified restrictions on marriage are discouraged on grounds of public policy, and instead of being *aided* by a liberal construction, they should be construed strictly, so as to favor those on whom the restraints are laid.

Uses in personalty are not executed under the statute of uses, but remain subject to the common law doctrine in regard to uses.

APPEAL from the Circuit Court of Baltimore city.

This appeal was taken from a *pro forma* order of the court below, (KREBS J.,) dissolving an injunction which had been granted upon a bill filed by the appellants.   The only questions arising in the case relate to the construction of the two deeds, and marriage articles set out in the opinion of this court, in which, also, all the facts of the case are fully stated.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

*Wm. B. Perine* and *John Nelson* for the appellants, stated that the questions in this case are confined to the two deeds, the one from Baker and McDonald, and the other from Powell and the marriage contract, and then argued.

1st. As to the Baker and McDonald deed. The rule of construction in cases of trusts created by deeds is the same as that adopted in cases of devises, and the *intention* of the donor is to govern if designated with sufficient certainty. That intent is to be ascertained, and when ascertained, enforced, unless it violate some rule or policy of the law. The whole context is to be regarded, and the general intent will override the particular intent where they are diverse, *(9 G. & J., 77, Hope vs. Hutchins. 11 Do., 206, Chase vs. Lockerman. 3 Md. Rep., 553, Ware vs. Richardson. 4 Do., 536, Holmes vs. Mitchell. 7 Do., 22, Douglas vs. Blackford.)* To ascertain and accomplish the intent words will be added, transposed or substracted. *(1 Fearne 6, note 1. 1 Jarman on Wills, 731. 7 G. & J., 248, Creswell vs. Lawson. 1 Md. Rep., 168, Chew vs. Chew. 2 Do., 88, Linstead vs. Green.)* Even the rule in *Shelley's case* is not *inflexible:* for wherever an intent to the contrary is shown upon the face of the instrument, the rule will give way. *(9 Gill, 432, Chelton vs. Henderson.)* With these principles in view let us look at the deed in question. It is executed by the party herself, who is the beneficiary under the trust, and creates no property in her which she had not before. It was all her own estate, and the only provisions in the deed which effect any change in the property are those which protect her rights as against her *husband,* and that which provides how the property shall go in default of appointment. Her *design* and *purpose* in executing this deed was, unquestionably, to secure the property to herself against *any claim* of her husband; the *intent* to exclude the husband is clear. *(2 Mylne & Keene, 90, Briden vs. Hewlett. 3 Ves., 486, Long vs. Blackall.)* The question then recurs, can this be done? And upon this point the authorities

are decisive.   Technical trusts are not executed by the statute of uses, as technical uses are, but the legal estate is vested in the trustee in order to effectuate the donor's intention, and where property is conveyed to trustees for the separate use of a married woman, a court of equity will enforce the performance of the trust and protect it against the legal rights of the husband.   (16 *Pick.*, 330, *Ayer vs. Ayer.*   3 *Md. Rep.*, 547, *Ware vs. Richardson.*)   Where a term has been settled to the separate use of the wife, or where before marriage the husband has consented to the settlement of his or her term, he cannot dispose of it.   (2 *Bright on Hus. & Wife*, 99.)   The fact that this deed conveys personal property or chattels real, and contains a limitation over, after an absolute or life estate in the wife, is said to render the limitation void.   But though the law does not allow limitations of personal estate by way of *remainder*, in the proper use of that term, yet, by executory bequest or trust, interests in the nature of remainders may be created by will or deed, and it is now clear, that there may be a limitation over of personal property after a life estate.   (6 *Pet.*, 68, *Smith vs. Bell.*   6 *G. & J.*, 232, *Biscoe vs. Biscoe.*   3 *Gill*, 92, *Clagett vs. Worthington.*   4 *Md. Rep.*, 535, *Holmes vs. Mitchell.*   6 *Do.*, 151, *Woodland & Wife, vs. Wallis.*)   But the husband has here renounced all his marital rights to the property in dispute, and he is *estopped* by the marriage articles from setting up any claim to it.   This marriage covenant being his deed, and derogating from his rights as husband, is to be construed, as that of any other grantor, most strongly against him, and he can take no other interest than that expressly given by the deed.   (1 *Fearne*, 90.   2 *Bright*, 200.   23 *Eng. Law & Eq. Rep.*, 595, *Trusts of Mary Daniel's Will.*   6 *G. & J.*, 356, *Ward vs. Thompson.*   5 *Md. Rep.*, 326, *Maurer vs. Naill.*   3 *Ves.*, 244, *Watt vs. Watt.*   6 *Munf.*, 132, *Bray vs. Dudgeon.*)   The marriage articles here refer to and embrace the terms of the deed, and were executed to effectuate the purposes of the settlement contained in the deed.   By them the husband, in terms as broad and comprehensive as they can be made, *relinquishes all claims he may have in the whole estate of his intended wife.*

2nd. As to the Powell deed: By the terms of this deed, the husband is, after his subsequent marriage, unquestionably excluded from all right in the property conveyed by it; and the same argument in regard to its construction is applicable to this as well as the preceding deed. It is also effected by the marriage articles, which contain a clause expressly applying to *future* acquisitions from the proceeds of the property.

3rd. But it is said, the surviving husband comes within the terms of the clauses in one or both of these deeds, limiting the property over in default of appointment by the wife. By the first deed the property is to go, in default of appointment, "to such persons as would, by the existing laws of Maryland, *take an estate in fee simple by descent from her;*" by the second, "to such persons as should be the *legal heirs* of the said Charlotte," and it is supposed the husband takes under one or both of these clauses. The terms *"heir," "right heir," "heir at law"* and *"legal heirs"* are identical and of the same meaning. A legal heir is one who is of the *same blood* of the deceased. (1 *Bouv. Dic.*, 582. 4 *Kent's Com.*, 537, *note*.) *"Heir at law,"* when applied to personal estate, means the heir to the fee or *"next of kin."* The term *"next of kin,"* in such cases, never means the *"husband,"* who does not take under the statute of *distribution*, as *distributee*, but superior to the statute *jure mariti*. 5 *Ves.*, 399, *Holloway vs. Holloway*. 1 *Jac. & Walk.*, 388, *Vaux vs. Henderson*. 6 *Simons*, 47, *Robinson vs. Smith*. 2 *Myl. & Keene*, 69, *Gittings vs. McDermott*. 4 *Russell*, 384, *Mounsey vs. Blamire*. 7 *Law J.*, 300, *Newenham vs. Pittan*. 1 *Hoff. Ch. Rep.*, 212, *Wright vs. Trustees of Methodist Church*. 2 *Gill*, 237, *Mitchell vs. Mitchell*. 3 *Ves.*, 244, *Watt vs. Watt*.

*Wm. H. G. Dorsey* and *Thomas S. Alexander* for the appellees, argued:

1st. That the surviving husband is entitled beneficially to the premises conveyed by the Baker and McDonald deed. Deeds must be construed by the language used in them, and the intention and circumstances of the parties. Other deeds,

conveying other parcels of property, cannot be resorted to for the purpose of proving the intent with which the particular deed in question was executed. The husband, at common law, has all the personal property of the wife *jure mariti,* and the *onus* is, therefore, on the other parties, to show that there is something in this deed which *restricts* this marital of the husband. We insist, that the first limitation in this deed vested the entire interest in Mrs. Crow; and that there is no other limitation to be found in it, which restrains or lessens the effect of the first limitation to the prejudice of the rights of the surviving husband. It gives to her an *absolute estate* in this property; she had the power to dispose of it at pleasure. In all such cases the ulterior limitations are void. (3 *Ves.,* 7, *Pushman vs. Filliter.* 2 *Coxe,* 349, *Bland vs. Bland.* 11 *Ves.,* 205, *Wilson vs. Major.* 1 *Jac. & Walk.,* 154, *Ross vs. Ross.* 1 *Merivale,* 314, *Bull vs. Kingston.* 8 *Simons,* 22, *Simmons vs. Simmons.* 10 *Eng. Ch. Rep.,* 518, *Phillips vs. Eastwood.* 10 *Johns.,* 19, *Jackson vs. Bull.* 16 *Do.,* 588, *Jackson vs. Robins.* 62 *Law Lib.,* 1. 2 *Ves., Jr.,* 532, *Malim vs. Keighley.*) The wife thus having the *absolute* interest in the property and the limitation over being void, the marital rights of the husband attached upon the decease of the wife. The marriage articles do not *disturb* this settlement, but refer to and purport to *confirm* it, and they, with the deed, only secure to the wife the sole and separate use of the property *during her life.* The marriage articles are to be construed strictly and as not taking from the husband more than he expressly stipulates to surrender, and here he only agrees to give up to the heirs of the wife such rights as they might have under the deed.

2nd. That the husband is entitled, beneficially, to the entire interest in the premises conveyed by the Powell deed, by force of the last limitation, to be found in it, being, in contemplation of law, *heir* to his deceased wife's leasehold estate. 14 *Ves.,* 478, *Carr vs. Lord Erroll.* 4 *Russel,* 384, *Mounsey vs. Blamire.* 2 *Myl. & Keene,* 69, *Gittings vs. M'Dermott.* 1 *Ves., Jr.,* 48, *Fettiplace vs. Gorges.* 2 *Strange,* 1111, *Rex vs. Bettesworth.* The husband takes as *next of*

Waters *vs.* Tazewell.

*kin*, in the sense of being the party upon whom the law casts the succession. The phrase means next of blood *inheritable*, in reference to the statute of distributions, and not next of blood in the sense of *consanguinity*.

3rd. But, in the alternative, the husband is entitled to an estate for life, in the premises last mentioned, by force of the express limitation thereof, to him for the term of his life. The condition in reference to a future marriage is in restraint of marriage, and is to be enforced only in favor of the person claiming under the subsequent limitation, which is not to be extended or enlarged by equitable construction. As then the limitation is to take effect by the express letter, only after the death of the appellee, the condition during his life is inoperative. (1 *Story's Eq.*, sec. 257, *and cases there cited*.) The condition, that his interest shall become void on his subsequent marriage, being succeeded by a limitation, which is to take effect only after his death, there remains, in the event which has happened, an interest undisposed of, which is in the nature of a resulting trust, and devolved on him as surviving husband.

ECCLESTON, J., delivered the opinion of this court.

The bill in this case speaks of several parcels of property, the controversy in regard to which has been settled by agreement between the parties. And the only property now in dispute is mentioned in the two deeds to Denison, in trust, one from Baker and McDonald, dated the 22nd of April 1839; and the other from Powell, dated the 13th of August 1841.

The bill was filed by the appellants against the appellees. On the 23rd of February 1855, by consent, a decree was passed, which disposed of sundry matters set forth in the bill as grounds of claim. On the 28th of May 1855, a *pro forma* order was passed, dissolving an injunction which had been issued for the purpose of enjoining Tazewell from conveying, assigning, or in any manner alienating the property now in controversy. From which order this appeal has been taken, for the purpose of obtaining the decision of this court as to the rights of the respective parties, in relation to the property mentioned in the two deeds which have been referred to.

Charlotte A. Crow, a widow, being possessed of certain real and personal property, on the 11th of July 1837, conveyed the same to Marcus Denison, his heirs, executors, administrators and assigns, to the use of the said Marcus Denison, his heirs, executors, administrators and assigns, forever, in trust and confidence for such uses, intents and purposes, as most undoubtedly gave to the said Charlotte, at all events, whilst a *feme sole*, full power and authority to sell, dispose of and convey the said property, or any part thereof, and the rents, issues, income and profits of the same, as she might deem proper.

Out of the issues and profits of the property included in the deed last mentioned, Charlotte A. Crow purchased, on the 22nd of April 1839, the leasehold lot of ground on Pitt street in Baltimore, which is described in the deed from Baker and McDonald, and which, by the directions of Charlotte, was conveyed by that deed to M. Denison, his executors, administrators and assigns, "in trust for the sole and separate use, benefit and behoof of the above named Charlotte A. Crow, her executors, administrators and assigns, so that she be suffered and permitted either to receive and take the clear rents, issues and income, or proceeds in case of sale, as aforesaid, to apply to such uses and purposes as she should think proper, in the same manner as if she were a *feme sole*, so that neither the said trust estate and property, nor the rents, issues, income or proceeds thereof should at any time be subject to the power, disposal or control of the present or any future husband of the said Charlotte A. Crow, or be in any manner liable or bound for or by his debts, contracts or engagements. And from and immediately after the decease of the said Charlotte A. Crow, in case no sale or disposition shall have been made by her of said ground and premises by deed or contract, then in trust for such person or persons, or for such uses and purposes as she by her last will and testament, executed in the presence of and attested by three credible witnesses, should name, limit or appoint; and in default of such nomination, limitation and appointment, then for the use and benefit of such person or persons as would, by the now (then) existing laws of the

State of Maryland, take an estate in fee-simple by descent from her, and to, for and upon no other use, trust, intent or purpose whatsoever."

In contemplation of an intended marriage between Mrs. Crow and Tazewell, (the appellee,) he executed a marriage covenant on the 1st of March 1841, which, after referring to the intended marriage, recited, that although the estate, real and personal, of the said Charlotte A. Crow had been conveyed to trustees for her sole use and benefit, still it seemed agreeable and proper that the covenants thereinafter expressed should be made, "in order to satisfy all parties, and to secure the property to which the said Charlotte A. Crow is in any way entitled, from the control or interference of the said Samuel Oliver Tazewell." And in consideration of the premises, and for other considerations, the said Tazewell covenanted, granted, promised and agreed, that Mrs. Crow should and might, "at all times thereafter, have, hold, occupy, enjoy, use and dispose of, peaceably and quietly, in such manner as she might think fit, all rents and profits, use, service and income, arising, or to arise, out of land, negroes, bank stock, or any other property, real, personal or mixed," to which she was then in any manner entitled, "free from the let, suit, hindrance, trouble, denial, expulsion, interruption or interference of the said Samuel Oliver Tazewell, without being interrupted in the enjoyment thereof by any act, means, consent, privity, default or procurement of his, and freed from any right, title or interest therein, which he, the said Oliver Tazewell, might otherwise have therein by virtue of the said marriage then about to be solemnized; and further, that no part of the said estate of the said Charlotte Augusta should thereafter become liable for any debt or obligation of the said Samuel Oliver Tazewell, whether the same be debts contracted before or after the marriage; and particularly, and lastly, that he, the said Samuel Oliver Tazewell, would never interfere in any way in selling, or otherwise disposing of, any slave or slaves of the said Charlotte Augusta Crow, without her express desire, and without her free and entire consent."

Shortly after the execution of the marriage covenant the

marriage took place; and subsequently thereto, on the 13th of August 1841, Charlotte purchased a leasehold lot of ground from Samuel A. Powell, for $1200, with funds belonging to her for her sole and separate use; which property, by her directions, and with the knowledge and assent of her husband, was conveyed to Denison, his executors, administrators and assigns, "in trust that he, the said Denison, permit and suffer the said Charlotte Augusta Tazewell, and her assigns, to have and receive the rents, issues and profits of the said premises, free from all control whatever from her said husband, or any future husband, for and during so many of the term of ninety-nine years then to come and unexpired, as she should happen to live;" and if she should wish and consent to assign the premises, "then in trust that he, the said Marcus Denison, his executors, administrators or assigns, should assign and transfer the said premises," in such manner as she might direct or authorise; and if the said premises should not be sold during the lifetime of the said Charlotte, then, after her death, the said leasehold property should "be in such person or persons, and upon such conditions, manner and form as the said Charlotte A. Tazewell should, whether covert or discovert, by any writing purporting to be her last will and testament, duly executed and testified in the presence of two credible witnesses, give, limit, dispose, direct and appoint;" and in default of any such gift, limitation, disposition, direction or appointment, "then in trust that the said Marcus Denison, his executors, administrators or assigns, in case Oliver Tazewell, the husband, should survive his wife, should pay, or else permit the said Oliver Tazewell and his assigns to receive, the rents, issues and profits of the said leasehold premises during his natural life only, to and for his own use and benefit, provided the said Oliver Tazewell should continue unmarried after the death of his wife then living, and from and immediately after his decease, then to go, and be transferred and assigned to such person or persons as should be the legal heirs of the said Charlotte A. Tazewell, for and during so many years of the said term of ninety-nine years as should be then unexpired."

In April 1853, Mrs. Tazewell died, having made no will, leaving no child or descendant of a child, and without having disposed of, or made any appointment in regard to, any of the property mentioned in the deed from Baker and McDonald, or in that from Powell. She was the sister of the complainants, who, at the time of her death, were, and still are, her only heirs at law and next of kin.

Tazewell, the surviving husband, married again in April 1854.

The appellants contend, that the *pro forma* order dissolving the injunction should be reversed. They claim, that as next of kin to Charlotte A. Tazewell, upon the true construction of the deed from Baker and McDonald, the marriage covenant and the deed from Powell, they are entitled to the leasehold property mentioned in those two deeds; insisting, that whatever estate in the property included in the Powell deed Samuel O. Tazewell had, at any time, was terminated by his second marriage.

It will be seen that this controversy is in reference to personal property, and is, therefore, subject to the common law doctrine in regard to uses, as uses in personalty are not executed under the statute of 27th Hen. 8, ch. 10. We make this remark to avoid misapprehensions which might arise from decisions made under the statute.

As the decision we are about to make has been very much influenced by that of the Supreme Court of the United States, in *Marshall vs. Beall*, 6 *How.*, 70, it will be proper to state the circumstances of that case.

The matter there in dispute was a judgment for $1500, the question being, whether the surviving husband or the next of kin of the deceased wife were entitled to the money?

In contemplation of a marriage between Robert Marshall and Ann Berry, they entered into a written agreement, that Ann should "hold in herself all her right, title and interest" to certain "funds of her own." After the marriage, on the 1st of May 1824, the husband and wife executed a deed of trust to S. G. Beall, referring to the former agreement, and reciting, that when made the said Robert agreed to make any

other or further instrument of conveyance, which might be considered necessary fully to assure and convey the stock and debts to the sole and separate use of the said Ann, her heirs and assigns, free and clear from any debts, control, demands or incumbrances of the said Robert; and also reciting, that the husband and wife had agreed to dispose of and settle two judgments, (one for $2000, and the other for $1500,) and a tract of land, "by a more full, complete and formal instrument of writing than the marriage agreement," before mentioned, "according to the terms, stipulations and conditions" of the instrument then being executed. By which deed the parcel of land and the two judgments were conveyed and assigned to S. G. Beall, her heirs, executors, administrators and assigns; the land to be held in trust for the use of the husband and wife during their joint lives, and to the use of the husband for his life, if he should be the survivor;—the further trust being, that the husband should have and receive the judgment for $2000, with interest and costs, "to his sole and *separate* use, free and clear of the marriage contract before mentioned, and of all *separate* claim of the said Ann Marshall;" "and in further trust that the said Susan G. Beall should hold the said judgment of fifteen hundred dollars, with interest and costs, for the sole and *separate* use of the said Ann Marshall, her executors, administrators and assigns, free and clear from any control or demand of the said Robert Marshall, or of his creditors, debts or engagements; and upon the payment of the said judgment, or any part thereof, to invest the said money in stock, or to loan the same on interest, with the approbation of the said Ann Marshall, for the like sole and *separate* use of the said Ann Marshall; and in further trust, that the said Ann Marshall, during the life of her husband, may dispose of said judgment or the proceeds thereof, and of her right, interest and estate in the said tract of land, after the death of the said Robert Marshall, either by her last will and testament, or by any instrument of writing, under her hand and seal, in the presence of two witnesses, during her coverture, in the same manner as if she were single."

The wife died without making any disposition of this judg-

ment, and the surviving husband claimed it, but he was defeated.

In delivering the opinion of the court, Mr. Justice Catron says: "The question presented for our decision is, whether the husband only made a temporary surrender of his marital rights during the coverture, or whether he abandoned them altogether? This depends on the intention of the parties, as expressed in the marriage articles." By "marriage articles," it is evident he alludes to the two instruments we have spoken of. He speaks of the first agreement as being vague, rendering it doubtful whether the marital rights of the husband would not attach, although the court did not doubt the wife desired, and really intended, to retain her property as if she was a *feme sole*, notwithstanding the marriage. Reference is then made to what is called "the article of 1834." This is erroneous in point of date. The instrument alluded to is, manifestly, the trust deed dated the 1st of May 1824. In relation to this the court say: "We think that the terms of the agreement of 1834 sufficiently show, that the intention of the parties was, to carry the title of the fund beyond the period of the wife's death, and to exclude the husband. And in this conclusion we are supported by the opinion of the Court of Appeals of Maryland, in the case of *Ward vs. Thompson*, 6 *Gill & Johns.*, 349, and in the soundness of which opinion we fully concur."

In *Ward, et ux., vs. Thompson*, 6 *G. & J.*, 349, the ante-nuptial settlement between Robert Thompson and Ann W. Menger, provided, that the real and personal property of Ann should be held in trust, "to and for the use and benefit of the said Ann W. Menger, her heirs and assigns, forever, without impeachment of, or for any manner of waste, all of which property to be under and subject to, the exclusive and entire management and control of the said Ann W. Menger, her heirs, executors, administrators or assigns, without the interference in any manner of the said Robert Thompson. And the said Ann W. Menger, her heirs, executors, administrators or assigns, to receive and enjoy the rents, issues and profits thereof; and the said Ann W. Menger to have full power and authority to make such disposition of all, or any part of said

property, as she at any time might think proper and advisable, and to dispose of the same by last will and testament, in as full, free and ample manner as if she were not a married woman, but a *feme sole*." Under which settlement the court held, that the husband had not made a temporary surrender of his marital rights over the estate, "but had abandoned them forever," and they directed a revocation of the letters of administration which had been granted to him, upon the personal estate of his deceased wife.

There being some difference in the language of the two deeds, under which the present controversy arises, we will first confine ourselves to the one from Baker and McDonald: The property mentioned in this is claimed by Tazewell under one or the other of two views. First, that the provision in reference to who should take in case of no will is void, and no one can claim title under it, because the previous provisions gave the entire and complete equitable estate to Mrs. Crow, without limit or restriction, so that any disposition of it, which she might make, would not take effect as under a mere power, but by virtue of her proprietary right. And with such an estate in her, the marital rights of the husband attached upon the decease of the wife, if not before; the deed itself, or that, with the aid of the marriage covenant, only having the effect of securing to her the sole and separate use of the property during her life. But supposing this position to be erroneous, then it is said, if the use provided for, in case of intestacy, is valid, the husband is not excluded, but, under the correct interpretation of that provision, he is entitled to claim.

This latter view will be first disposed of.

We need not decide whether, "such person or persons, as would, by the now existing laws of Maryland, take an estate in fee-simple by descent from her," means *next of kin*, (as personal property is intended to be conveyed,) or *heirs at law*, technically such. The appellants are admitted to be the next of kin and heirs at law, and, therefore, are capable of taking, whether they must claim in the one character or the other; whilst, in our opinion, the appellee, Tazewell, cannot claim under either.

In 2 *Bright on Husband & Wife*, 203, it is said to have been decided, "that the husband took no beneficial interest under an ultimate limitation in a settlement to the right heir or heirs of the wife." For this decision the author refers to *Newenham vs. Pittan*, (should be *Pittar*,) 7 *Law J., N. S.*, 300. The report of that case shows, that by a marriage settlement designed to aid in making provision for the wife, and issue, if any, of the contemplated marriage, certain personal property of the intended wife was assigned to trustees, in trust for her, her heirs, executors, administrators and assigns, until the marriage, and then in trust, "to pay the annual income to her, or as she should appoint, for her life, and after her death to pay them to her husband for life, and after the decease of both of them, in case there should be no children of the marriage," then in trust to convey, assign and assure the property "to the right heir or heirs" of the wife forever. The wife died without issue, and the surviving husband took out letters of administration on her estate. In the bill filed by him, he claimed to be *absolutely entitled* to the whole of the property against the trustees of the settlement, the heirs at law, and the next of kin of the deceased wife.

In the opinion given, in 1838, by Lord Langdale, as Master of the Rolls, he says, "Is the husband the right heir of his wife? Does he come under that description? I think it is admitted, that he does not come under the literal meaning of the term. But it was said, that the right heir might mean such person as should become by law entitled to succeed to the property; that the husband is the personal representative of the wife, and, therefore, although he is not entitled to this property without letters of administration, yet he is entitled to it with the aid of these letters. Can that be the meaning of this sentence? The words here cannot be considered as idly or carelessly used in the different parts of this settlement. We find a limitation in trust for the intended wife, 'her heirs, executors, administrators and assigns,' until the marriage; and in default of issue there is a trust for the right heirs or heir of the wife. Having regard to the whole instrument, I cannot doubt that I must attribute to this settlement an inten-

39    v.9

tion to exclude the husband.   If it had been intended that the husband should have been a trustee for the next of kin, very different words would have been used.   The words 'heirs and heir of the wife' being used, and the husband not coming under these words, and there being nothing in the settlement to alter their meaning, the effect of them is to exclude the husband."

The court declined deciding "the question, who was entitled after the husband was excluded;" not deeming it the proper time for such a decision, inasmuch as under the ultimate limitation, the property was not to be enjoyed until after the decease of the surviving husband.

The counsel for Tazewell have not said that he can claim as heir at law, but they contend, that as the property disposed of is personalty, the expression, "Such person or person as would, by the now existing laws of Maryland, take an estate in fee-simple by descent from her," must be considered as meaning next of kin; in which character the husband may take.   To this we cannot assent.   On the contrary, a careful examination of the authorities has convinced us, that an ultimate limitation, either in favor of next of kin or of heirs at law, does not include a husband, unless there be some manifestation of an intention to include him; and here we find no evidence of such intention.   6 *How.*, 70, *Marshall vs. Beall,* and cases there referred to.   1 *Pow. on Dev.*, 290, *(by Jarman,) in* 21 *Law Lib.*, 170.   2 *Roper on Husb. & Wife,* 63, *in* 32 *Law Lib.*, 41, 42.   *Stewart vs. Stewart,* 7 *John. Ch. Rep.*, 246 *& 247.   Wright & Others vs. Trustees of Meth. Epis. Church,* 1 *Hoffman's Ch. Rep.*, 213, 214.   2 *Jarman on Wills, (Ed. of* 1855,*) marg. p.* 37, *(and note 2,) also marg. p.* 49, *(and note 1,) and Newenham vs. Pittar.*

The husband, as such, cannot, with any propriety, be said to take property, by descent, from the wife.   His marital rights attach by or during the coverture.   By contract they may be temporarily suspended or permanently abandoned.   In *Ward, et ux., vs. Thompson,* Judge Dorsey says: "The marital rights of the husband having been *suspended* only during the life of the wife, after her death they are as effectually *revived,*

as regards the future, as if no such suspension had ever taken place.''

The husband, in our opinion, is excluded from any right to the property, under the provision in favor of those who would ''take an estate in fee-simple by descent,'' if that is not a void but a valid provision. If, however, it is void, so as to pass no estate, still it may be used in connection with the other portions of the deed, as evidence of an intention to bar the marital rights of the husband beyond the life of the wife.

If the provision is a valid one the husband has no claim, but the appellants have. Whether valid or void, however, will make no difference in the result, for if void, still the deed will bar the rights of the husband and establish those of the appellants. This must be so, if we are to respect the ruling of the courts in *Marshall vs. Beall,* and *Ward, et ux., vs. Thompson.* We have seen that the trust is ''for the sole and separate use, benefit and behoof'' of Mrs. Crow, *''her executors, administrators and assigns,''* so that she might ''either receive and take the clear rents, issues and income, or *proceeds,* in case of sale,'' and apply them ''as if she were a *feme sole,* so that neither the said *trust estate and property,* nor the rents, issues, income *or proceeds* thereof, should, *at any time,* be subject to the power, disposal or control'' of her husband, or be subject to his debts. And then follows the provision in favor of those who would ''take an estate in fee-simple by descent,'' in the event of no will being made.

If the language of the agreements, in the two cases which have been noticed, and especially the one in 6 *How.,* was sufficient to show, that the parties intended ''to carry the title of the property beyond the period of the wife's death, and to exclude the husband,'' we think the terms of the deed before us may be justly considered as having a like effect.

The agreements, referred to in those cases, were ante-nuptial contracts, made and signed by both parties, in contemplation of a speedy marriage. The present is a deed conveying property in trust for the sole and separate use of a *feme sole,* with a view to protect it from the marital rights of any future husband, but without reference to a marriage then in contem-

plation.   At one time the validity of such instruments was questioned, but they are now admitted to have the effect of securing to the *feme* the separate use of her property, after marriage, according to the provisions contained in them, when free from any imputation of fraud or concealment.   There can be no such imputation in the present instance, because before the marriage Mr. Tazewell had knowledge of the deed, as may be seen by the marriage covenant.   The subsequent marriage, therefore, in connection with this covenant, may be regarded as a virtual adoption of the provisions of the deed by the husband.   And that such a deed, followed by marriage, with previous knowledge on the part of the husband, as to its existence, will secure to the wife a separate estate in the property, and bar the marital rights of the husband, may be seen by reference to the following authorities:   2 *Bright on Husb. & Wife*, 205.   2 *Kent's Com.*, 164 & 165, *marg. pages, and the notes, (7th Ed.)*   2 *Story's Eq.*, sec. 1384, *and notes, (5th Ed.)*   1 *Jarman on Wills*, 835, *marg. p., (Ed. of* 1855.)

Believing, as we do, that under the provisions of the deed the husband is excluded, we have not considered it necessary to ascertain, whether the counsel for the appellants are right in contending that his marital rights are barred forever, by the covenants contained in the marriage agreement; or whether the counsel for the appellees have given the correct construction to that instrument, in supposing it only covenants for securing to the wife, the sole and separate use of her property for life.

The appellants claim the property mentioned in the Powell deed, because, according to the terms of that instrument, Tazewell's interest in the premises ceased upon his second marriage.   The portion of the deed which relates particularly to this question, provides, that in case the husband should survive his wife, he and his assigns should have the rents, issues and profits, "during his natural life only, to and for his own use and benefit, provided he should continue unmarried after the death of his wife, then living, and from and immediately after his decease, then to go and be transferred," &c.

Waters *vs.* Tazewell.

Although the use to the husband for life is followed by a proviso or condition, that he should remain unmarried, yet the gift over is not upon his marriage, but "from and immediately after his decease." It is not, in terms, a gift over, based upon the event of a second marriage. If allowed to limit or reduce the life estate it will be giving effect to a provision, in reference to personal property, imposing, not a partial, but a general restraint upon marriage, by means, not of a precedent, but of a subsequent condition, in the absence of any limitation over, on a failure to comply with the condition. Unqualified restrictions on marriage are discouraged on grounds of public policy, and instead of aiding them by applying liberal rules of construction, the courts have been disposed to construe them strictly, in such manner as will favor the persons on whom the restraints are laid. We, therefore, cannot adopt the views of the appellants' counsel, so as to consider the gift over, after the husband's decease, as taking effect upon his second marriage; or that his life estate terminated upon the occurrence of that event. 1 *Story's Eq.*, secs. 279, 280, 283, 286 *to* 290, *and notes, (last Ed.)* 1 *Jarman on Wills*, 841, 842 & 843, *marg. paging, (Ed. of* 1855.) *Binnerman vs. Weaver, et al.*, 8 *Md. Rep.*, 517.

By reference to *Chitt. on Cont., sec.* 671, (6*th Am. Ed.*,) and *Story on Cont., sec.*, 557, it may be seen in what an unfavorable light general restraints upon marriage are regarded, when attempted to be effected by means of express contracts.

In our opinion, the appellants are entitled to the property mentioned in the deed from Baker and McDonald, but they have no right to demand possession of that which is described in the deed from Powell.

The order dissolving the injunction will be affirmed, and the cause remanded for further proceedings, in accordance with the principles announced in this opinion.

*Order affirmed and cause remanded.*