MARTHA ARTHUR, by her husband and next friend, JOHN ARTHUR *vs.* ELIZABETH COLE.

*Gift in restraint of Marriage—Construction of a Deed of lease-hold property from a brother to his two Unmarried sisters, during their Lives, or so long as they should remain Unmarried—Leasehold property to be regarded as Personalty.*

W. H. C., in consideration of one dime and of natural love and affection, conveyed by deed certain leasehold property to his two sisters, M. and E., "to have and to hold the same unto the said M. and E. as tenants in common so long as they both shall live, and from and after the death of either of them, then unto the survivor so long as she shall live and no longer; *or* so long as they both shall remain unmarried; and from and after the marriage of either of them, then unto the one remaining unmarried, so long as she shall live, and no longer." M. married, and E. who remained unmarried, took exclusive possession of the premises. Upon an ejectment brought by M. and her husband to recover an undivided moiety of the premises, it was HELD:

1st. That the purpose of the brother evidently was, not to restrain the marriage or promote the celibacy of his sisters, but to give them a small property as a home or support, until they should severally marry and have husbands to maintain them.

2nd. That there was nothing immoral or illegal in this purpose, and it was carried out by this deed without infringing any rule of law.

3rd. That the weight of authority fully sustained the validity of the grant.

4th. That the deed was to be regarded as a conveyance of personal property; because by our law, a leasehold interest in land, though under a lease for ninety-nine years, renewable forever, is personal estate, subject to all the rules governing that species of property, save in so far as those rules have been modified by express legislation.

APPEAL from the Superior Court of Baltimore City.

The case is sufficiently stated in the opinion of the Court. The exceptions are omitted, as they are not

necessary to the understanding of the questions passed upon.

The cause was argued before BOWIE, GRASON, MILLER, ALVEY and ROBINSON, J.

*William George,* and *Joseph C. Boyd,* for the appellant.

*Thomas R. Clendinen,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This case turns upon the construction and effect of the deed of the 29th of October, 1868. By that deed William H. Cole, in consideration of one dime, and natural love and affection, conveyed a small *leasehold property* in the City of Baltimore, to his two sisters, Martha and Elizabeth, " to have and to hold the same unto the said Martha and Elizabeth, as tenants in common, so long as they both shall live, and from and after the death of either of them, then unto the survivor so long as she shall live, and no longer, *or* so long as they both shall remain unmarried, and from and after the marriage of either of them, then unto the one remaining unmarried so long as she shall live or remain unmarried, and no longer." Martha married in 1873, and Elizabeth who remained, and still remains unmarried, took exclusive possession of the property, and denies that Martha since her marriage, has any title to, or interest therein. In September, 1878, Martha, by her husband and next friend, brought this action of ejectment to recover an undivided moiety of the premises, and insists that, under the deed, she took an absolute life estate, and that the limitation over in case of her marriage, is a condition subsequent, and being in restraint of marriage generally, is against public policy and void.

This is a subject that has been fruitful of discussion, and, indeed, of conflicting decisions. There seems how-

ever, a general concurrence of authority both in England and in this country in support of the position, that if to a gift or bequest of *personal property*, to a person other than the wife or husband of the donor, there be annexed a condition subsequent, that is, a condition by which an estate previously given and vested, is to be divested or forfeited upon marriage generally of the donee, such condition is void, whether there be a gift over or not. The doctrine that conditions in restraint of marriage are void, was derived from the civil law, and though it still prevails, and is everywhere recognized and enforced with greater or less strictness, some of the English Judges in recent cases have suggested that the reason upon which the doctrine was originally founded has ceased to exist. *Allen vs. Jackson*, 1 *Ch. Div.*, (*Law Rep.*, 399;) *Jones vs. Jones*, 1 *Queen's Bench Div.*, (*Law Rep.*, 279.) But no case has yet gone to the extent of repudiating the doctrine altogether, though the tendency of modern decisions perhaps is not to extend it, nor to strive to bring within its operation cases which, by fair and just construction, fall under the well recognized distinctions and exceptions. One of these distinctions sustained by the great preponderance of authority, is that between a limitation and a condition subsequent, or in other words, between the language by which the duration of an estate or interest is prescribed, and that by which an estate previously created, is cut down, defeated, or divested. One of the cases in which this distinction is forcibly stated is *Heath vs. Lewis*, 3 *De G., McN. & G.*, 954. In that case a testator bequeathed an annuity to an unmarried woman "during the term of her natural life, if she shall so long remain unmarried." The annuitant, after enjoying the annuity for some years, married, and the question was whether the annuity was determined by her marriage. The Lord Justice KNIGHT BRUCE said: "It must be agreed on all hands that it is, by the English law, competent for a man to give to a single

Arthur *vs.* Cole.

woman an annuity until she shall die or be married, which-
ever of these two events shall first happen.   All men agree
that if such a legatee shall marry, the annuity will there-
upon cease.   But this proposition has been advanced—
a proposition which, if true, (and I do not deny its truth,)
is perhaps not creditable to the English law—that if a man
give an annuity to a woman who has never married, *for
life*, and afterwards declare *that, if she shall marry*, the
annuity shall be forfeited, the condition is void, and
she may yet marry as often as she will, and retain her
annuity.   Such is the state of our English law on this
subject said, and perhaps truly, to be ; and the question
argued before us has been, to which of these two classes the
gift in this will belongs, being a gift of an annuity to a
single lady 'during the term of her natural life, if she
shall so long remain unmarried,' this language being the
technical and proper language of limitation as distin-
guished from condition, long known to the English law
and familiar to us all.   Both upon precedent and reason,
upon principle and authority, I am of opinion that this is
a limitation as distinguished from a condition, and that
the annuity ceased when the lady married."

In *Morley vs. Rennoldson*, 2 *Hare*, 570, a testator by a
codicil, declared that his daughter should not marry, and
in case of her marriage or death, gave the property
bequeathed to her by his *will*, over to other legatees.   It
was held that this was a condition subsequent, creating a
general restraint upon marriage, and therefore void; but
in disposing of the case, the Vice-Chancellor Sir J. WIGRAM,
after examining the authorities, said that a gift until
marriage, and when the party marries, then over is with-
out doubt a valid limitation, for in such case there is
nothing to give an interest beyond the marriage: "If
you suppose the case of a gift of a certain interest, and
that interest sought to be abridged by a condition, you
may strike out the condition and leave the original gift in

operation ; but if the gift is until marriage and no longer, there is nothing to carry the gift beyond the marriage."

In *Lloyd vs. Lloyd*, 2 *Simons N. S.*, 255, a testator gave an annuity to his wife and a stranger for their joint lives, and at the death of either, her share to go to the survivor, and then added " *and in case* either should marry or live in adultery, *then* her share shall pass to the other," and should both marry, then their shares shall pass to his nephew. It was held that by these words a condition subsequent was annexed to an estate for life, which was good as to the widow, but void as to the stranger; but the Vice-Chancellor KINDERSLEY said: " With regard either to his wife or to any other woman, a testator may make a gift so long as she shall remain single ; but if he first gives a life estate to a single woman, a stranger to him, and then annexes a condition that in case she marries at all, it shall go over, that being in general restraint of marriage, is not a good condition." This case which was much relied on by the appellant's counsel, is important only as showing that in the opinion of the Court, the words used in that will created a condition subsequent; for the distinction between a condition of that description, and a limitation is plainly recognized.

In *Bellairs vs. Bellairs*, 18 *Eq. Cases*, (*Law Rep.*,) 510, a testator by his will, directed his trustees to divide the income arising from the sale of certain real and personal estate, and to pay the same in certain shares to his seven children, four of whom were daughters. Then by a codicil he declared that on the marriage of either of two of his daughters, (to whom ten shares each had been given by the will,) the bequests of the shares so given to them, and each of them, shall absolutely cease and be void, and she shall receive four shares only, and to the one that shall remain unmarried, he gave thirteen shares, but directed the same to be reduced to four on her marriage, and on the marriage of both, he directed that the twelve over-plus shares should

Arthur *vs.* Cole.

fall into and form part of his residuary estate. One of these daughters married, and the Master of the Rolls, Sir G. JESSEL, after some hesitation and with much regret, decided that the language of the codicil created a condition of forfeiture, which was *in terrorem* and void, but he admitted that if the bequest had been put in the form of a limitation, that is, if the life interest had been given to the young lady until she married and then over, its validity could not be disputed.

In *Grace vs. Webb*, 2 *Phillips*, 701, there was a covenant by John Webb to pay to Eliza Castle, "during the term of her natural life, subject to the proviso hereinafter contained, an annuity of £40," and the proviso was, "that in case the said Eliza shall at any time hereafter happen to marry, then from and immediately after her marriage, the said annuity of £40 shall be, and is hereby reduced to £20," which shall be paid to her during the remainder of her life. The Vice-Chancellor SHADWELL, held that the proviso reducing the annuity was illegal and void as a restraint on marriage, but on appeal, this decision was reversed by Lord Chancellor COTTENHAM, who held that it was a grant of £40 per annum until marriage, and after that event of £20 for life, and that such a gift was perfectly lawful. "There can be no doubt," said his Lordship, "that marriage may be made the ground of a limitation *ceasing* or commencing. The argument in favor of this claim assumes that there is an unqualified grant of an annuity of £40 per annum for life, and an attempt to defeat the gift by an illegal condition subsequent. This proposition I think fails in all its parts, for there is not any unqualified gift of an annuity of £40 for life ; the contract and obligation is to pay to Eliza Castle during her life, subject to the proviso hereinafter contained, an annuity of £40 at certain times specified. The contract and obligation is not absolute and unqualified, but explained, qualified and bound by the proviso, and must

be construed precisely in the same manner as if the terms of the proviso had been introduced into, and made part of the contract and obligation. It is therefore to pay £40 per annum to her during so much of her life as she shall remain unmarried, which brings the case within the unquestioned rule of law, as acted upon in the cases referred to."

These authorities selected from the great number of decisions upon this general subject, because of their special bearing on the case before us, are quite sufficient to establish the distinction referred to, and it only remains to consider whether this deed contains any such condition as the law condemns. In determining this, the whole instrument must be examined without regard to particular expressions, or the order in which they occur, for it has been held, that even the word "provided," which, as we all know is an appropriate word to create a common law condition, does not invariably or of necessity do so; on the contrary, it may give way to the intent of the party as gathered from the entire instrument, and be taken as expressing a limitation in trust. *Stanley vs. Colt,* 5 *Wallace,* 119. But there is no such strong word in the present deed, and the intention of the grantor in executing it is very apparent. The purpose of the brother evidently was, not to restrain the marriage or promote the celibacy of his sisters, but to give to them a small property, as a home or support, until they should severally marry and have husbands to maintain them. It is hardly possible to conceive that there is any thing immoral or illegal in such a purpose, and, in our opinion it has been carried out by this deed without infringing any rule of law. We find in this conveyance no absolute and unqualified gift for life. The grant is to them as tenants in common so long as they shall both live, *or* so long as they shall both remain unmarried. The latter clause is an *integral* part of the grant, and not a *condition* upon which the previous grant

Arthur *vs.* Cole.

is to be defeated.    Its object was not to impose a penalty but to mark the extent of the interest given.    Read in the natural order in which the events must occur, and according to the manifest intent of the grantor, appearing on the face of the deed, it is a gift to his sisters during their single lives only, and when either marries or dies, whichever event shall first occur, her share is to go to the survivor during her single life, and no longer.    It would be strange if there was anything in the law prohibiting a brother, having entire control of his own property, from making such a provision for his unmarried sisters, and we are glad to find, upon a careful examination of the cases, that the weight of authority fully sustains the validity of such a grant.

In thus disposing of the case, the Maryland authorities, all of which have been cited in argument, have, of course been examined.    It is not necessary to review them, as there is nothing in any of them in conflict with what we now decide.    The present case depends entirely upon the construction of this particular deed.    We have also regarded the deed as a conveyance of personal property, because, by our law, a leasehold interest in land, though under a lease for ninety-nine years, renewable forever, is personal estate, subject to all the rules governing that species of property, save in so far as those rules have been modified by express legislation.

The rulings of the Court below denied the right of the plaintiff to recover, and it follows, from what we have said, that the judgment must be affirmed.

*Judgment affirmed.*