WILLIAM H. BOSTICK *vs.* STANSBURY BLADES.

*Condition in a devise in Restraint of Marriage—Practice in the Court of Appeals.*

A devise by a wife of her real estate to her husband for life, " if he shall not marry," but in the event of his marriage, to her brother in fee, is valid; and the husband having married again, the brother is entitled to recover in ejectment the estate so devised.

There is no substantial distinction between a condition imposed in restraint of a second marriage of a woman, and a like condition in restraint of a second marriage of a man. They are alike valid and effectual.

An objection made for the first time in the Court of Appeals, that the property, sought to be recovered in an action of ejectment, is not described with sufficient certainty to enable the plaintiff to recover, cannot prevail, the case having been heard and decided in the Court below upon an agreed statement of facts, by which also all errors and informalities in pleading were expressly waived.

APPEAL from the Circuit Court for Talbot County.

This was an action of ejectment brought by the appellee against the appellant. The verdict and judgment of the Court below were in favor of the plaintiff, and the defendant appealed. The case is stated in the opinion of the Court.

The cause was submitted to MILLER, YELLOTT, STONE, ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*I. C. W. Powell,* and *William R. Martin,* for the appellant.

*J. F. Bateman,* and *Philip F. Thomas,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

This was an action of ejectment, and the case was tried and determined by the Court below on an agreed statement of facts.

There is no question made in this Court, as we understand, as to the nature and extent of the estate taken by Mary Jane Blades, under the will of her mother, nor as to her power to devise the estate so acquired by her. Indeed, it would be difficult to perceive how such question could be made, as by the terms of the will of the mother, the daughter took by clear and unambiguous language, a fee simple estate in the land in controversy. The mother died in 1863, and some few months thereafter her will was duly admitted to probate. In 1872, Mary Jane Blades, the daughter and devisee, married the defendant, William H. Bostick, and died in 1876. She made and left unrevoked a will executed in due form to pass real estate, and which was duly admitted to probate. That will contains the following clause:—

" I give, devise and bequeath unto my husband, the said William H. Bostick, all my worldly estate, real, personal and mixed, subject to the payment of my said debts, funeral expenses and legacies, to have and to hold to him for and during the term or period after my death, that he shall remain unmarried ; and if he shall not marry, then for and during the term of his natural life, but in the event of the marriage of my said husband, after my death, or if he shall not marry, then, upon his death, I give, devise, and bequeath all of my said estate, to my brother, Stansbury Blades, his heirs and assigns forever."

The husband, the defendant in this action, has remained in possession of the real estate devised by the will of the wife up to the present time ; but in the year 1880, he married again, and thereupon this action was brought by Stansbury Blades, the brother, and devisee over, to eject the defendant.

Bostick *vs.* Blades.

In such state of case, the question is, as presented by the agreed statement of facts, whether or not the plaintiff is entitled to recover, under the terms and conditions of the devise by the wife,—the husband, the first devisee, having married a second time?

It would seem to be well settled by a great number of adjudications both in England and in this country, that conditions in *general* restraint of marriage, whether of man or woman, as a general rule, are regarded in law as being against public policy, and therefore void. But this rule has never been considered as extending to *special* restraints, such as against marriage with a particular person, or before attaining a certain reasonable age, or without consent. Nor has it ever been extended to the case of a second marriage of a woman; but in all such cases the special restraint by condition has been allowed to take effect, and the devise over held good, on breach of the condition. A condition, therefore, that a widow shall not marry, is, by all the authorities, held not to be unlawful. *Scott vs. Tyler,* 2 *Dick,* 712; *Jordan vs. Holkham, Amb.,* 209; *Barton vs. Barton,* 2 *Vern.,* 308; 2 *Pow. on Dev.,* 283; *O'Neale vs. Ward,* 3 *H. & McH.,* 93; *Binnerman vs. Weaver,* 8 *Md.,* 517; *Gough and Wife vs. Manning,* 26 *Md.,* 347; *Clark vs. Tennison,* 33 *Md.,* 85.

In the cases a distinction is taken between those where the restraint is made to operate as a condition precedent, and those where it is expressed to take effect as a condition subsequent; and the decisions have generally been made to turn upon the question, whether there be a gift or devise over or not. But if the gift or devise be to a person *until* he or she shall marry, and upon such marriage then over, this is a good limitation, as distinguished from condition; as in such case there is nothing to carry the interest beyond the marriage. There can be no doubt, therefore, that marriage may be made the ground of a limitation ceasing or commencing; and this whether the

devisee be man or woman, or other than husband or wife. *Morley vs. Rennoldson,* 2 *Hare,* 570; *Webb vs. Grace,* 2 *Phill.,* 701; *Arthur vs. Cole,* 56 *Md.,* 100.

In this case, if the devise to the husband had depended alone upon the terms of the first part of the devise, that is to say, the terms " to have and to hold to him for and during the term or period after my death that he shall remain unmarried," there could be no doubt it would have been a good limitation, and the estate devised to him would have terminated upon his second marriage. But we must read the whole clause together, and take one part in connection with the other, and so reading the terms of the devise, the terms that follow those just recited clearly put the devise in the form of a condition subsequent. The estate is given to the husband for life, but in the event of his second marriage it is devised over to the brother of the testatrix; or, in other words, the devise is to the husband for life, subject to a defeasance in the event of a second marriage. By the terms of this devise a vested estate passed to the husband for a definite duration, but by the happening of the event that was contemplated as possible, the estate, according to the contention of the plaintiff, became divested and passed over to the plaintiff.

Now, there being no question of the power of a husband to effectually impose such a condition in restraint of a second marriage of his widow, the question here is, whether a wife by a devise or gift to her husband can effectually impose a like condition in restraint of his second marriage?

Upon this precise question the books furnish but little direct authority. In our own reports the nearest case to the present is that of *Waters vs. Tazewell,* 9 *Md.,* 291. In that case a deed of leasehold property in trust for the sole and separate use of a *féme covert,* contained a provision that in case the husband should survive the wife, he and his

assigns should have the rents and profits " during his na-
tural life only, to and for his own use and benefit; *pro-
vided,* he should continue *unmarried* after the death of
his wife, then living,· and from and immediately *after his
decease,*" then over. This proviso was held void; but it
was because, as stated by the Court, that the gift over was
not upon the marriage of the husband,· but " from and im-
mediately after his decease." As the Court said, it was
not, in terms, a gift over, based upon the event of a
second marriage. "If allowed to limit or reduce the life
estate, it would be giving effect to a provision, in reference
to personal property, imposing, not a partial, but a gen-
eral restraint upon marriage, by means, not of a prece-
dent, but of a subsequent condition, in the absence of any
limitation over, on a failure to comply with the condition."
That case, therefore, is not an authority to control in de-
termining the present question. It is to be observed,
however, that there.is no suggestion or intimation by the
Court that there is, or could be urged, a distinction be-
tween the case of a condition as applied to a woman, and
a like condition as applied to a man, in restraint of a
second marriage.

In the Courts of England the direct question here pre-
sented does not appear to have arisen until very recently.
In 1875 the case of *Allen vs. Jackson, L. R.,* 19 *Eq. Cases,*
631, was decided by Vice-Chancellor HALL. In that case,
the testatrix gave the income of certain property to her
niece (who was her adopted daughter) and the husband of
the niece during their joint lives, and to the survivor during
his or her life, with a proviso that if the husband survived
his wife and married again, the property should go over.
The husband survived the wife and married again; and
the Vice-Chancellor held, that the attempted defeasance
of the husband's life interest, was void as a condition sub-
sequent in restraint of marriage. He said he could not
hold the law to be the same as to the second marriage of

a man as it is to the second marriage of a woman. That the law as regards the second marriage of a woman is exceptional, and that he did not think he could extend the exception to the case of a man.

That case was taken into the Court of Appeal (1 *Ch. Div.*, 399,) where it was fully argued upon all the principal authorities, before the Lord Justices, JAMES, MELLISH and BAGGALLAY; and upon full consideration, they all concurred in holding that the proviso was valid as a condition, and that the gift over took effect; and consequently reversed the judgment of the Vice-Chancellor.

Lord Justice JAMES reasoned the matter upon principle; and he said that as there was no statute or express decision of any Court to the effect, that there is any distinction whatever between the second marriage of a woman and the second marriage of a man, he was unable to see any principle whatever upon which the distinction could be drawn between them. He then shows to what injustice and hardship the distinction would lead. In the case of a widow, he said, it has been considered to be very right and proper that a man should prevent his widow from marrying again; and after stating the probable reasons for the rule, he proceeds to show with what reason and force they apply to the case of a gift or devise to a man with condition that he should not marry again. Suppose, he said, "we had the case of a married woman having property which she had power to dispose of by her will, and she left it to her husband by reason of his being the widower, and for the purpose of enabling him to perform his duties properly as the head of the family which she may have left; it would be monstrous to say that when she provided for the contingency of the husband marrying a second time, and having a new wife and a new family, she should not be able to say, 'In that case he is to lose the estate, and it is to go over for the benefit of my children.'" "In this particular case," speaking of the case before him, "it was not the

wife who was doing it, but it was a person who places her-
self in the position of the wife—the wife's mother—and
who says, making a provision for her adopted daughter,
that she gives her the income of her property for her life,
and then gives it, after her death, to her surviving hus-
band, evidently in his character of widower, with a
declaration that if he should marry again it should go
over to the child of the daughter who was the first ob-
ject she intended to provide for—a most reasonable and
proper provision, with respect to which it seems impos-
sible to suggest that there is any ground of public policy
against it."

In the reasoning of Lord Justice MELLISH he was equally
explicit in holding the condition against the second mar-
riage of the husband valid, and the gift over on breach of
the condition effectual. And in the concurring opinion of
Justice BAGGALLAY, the present state of the English law
upon the subject is summed up and stated with admirable
clearness. He says: "Now the present state of the law
as regards conditions in restraint of the second marriage
of a woman is this, that they are exceptions from the gen-
eral rule that conditions in restraint of marriage are void,
and the enunciation of that law has been gradual. In the
first instance, it was confined to the case of the testator
being the husband of the widow. In the next place,
it was extended to the case of a son making the will in
favor of his mother. That, I think, is laid down in *Godol-
phin's Orphans' Legacy, p.* 45. Then came the case before
Vice-Chancellor WOOD of *Newton vs. Marsden,* 2 *J. & H.,*
356, in which it was held to be a general exception by
whomsoever the bequest may have been made. Now the
only distinction between those cases and the present
case is this—that they all had reference to the second mar-
riage of a woman, and this case has reference to the second
marriage of a man; but no case has been cited in which a
condition has been held to be utterly void as regards the

second marriage of a man; and following the analogy of the other cases, there seems no reason at all why a distinction should be drawn between the two sexes as regards this matter.   It appears to me that this condition is one which may fairly be treated as valid, and I think so the more for this reason.   Here is a gift in favor of a man, which, if he is not deprived of it on the occasion of his second marriage, he may very probably or very possibly settle upon a second wife, and altogether deprive the original family, which was the object of the testatrix's bounty."

We have thus stated somewhat at large the reasoning of that case, because of the entire absence of any direct authority in our own Courts; and the conclusion of the Court of Appeal, founded as it is upon such cogent reason, and deduced from the principles of the common law, commends itself strongly to our assent.   In the absence of any binding authority to the contrary, we are of opinion that there is no good and substantial ground for maintaining a distinction between a condition imposed in restraint of a second marriage of a woman and a like condition in restraint of a second marriage of a man.   As the one is valid and effectual so is the other; and we therefore hold that the devise over to the plaintiff in this case, on breach of the condition by the defendant, is valid, and that the plaintiff is entitled to recover.

There is another question raised in this Court, and that is that the property sued for is not described in the declaration with sufficient certainty to entitle the plaintiff to recover.   But that question was not raised in the Court below, and the case was heard and decided upon an agreed statement of facts.   The question not having been raised below, cannot be raised in this Court for the first time. *American Coal Co. vs. County Commissioners of Allegany County, ante* 185.   Besides, by the agreed statement of facts, all errors and informalities in pleading were expressly waived.   That objection, therefore, cannot prevail.

We shall affirm the judgment appealed from, and direct final judgment to be entered in accordance with the agreed statement upon which the case was tried.

*Judgment affirmed.*

(Decided 12th January, 1883.)