FRANCIS A. WARD *et ux. vs.* ROBERT THOMPSON.—
*December,* 1833.

T and M in contemplation of marriage, agreed that all the property of the intended wife, (M,) and estate of every description to which she was then entitled, or might thereafter become entitled, should be, and was thereby conveyed to a trustee and his heirs in trust, for the use and benefit of the said M, her heirs and assigns forever, without impeachment of waste; all which property to be under, and subject to the exclusive and entire management and control of the said M, her heirs, &c. without the interference in any manner of the said T; and the said M, her heirs, &c. to receive and enjoy the rents, &c. thereof, with power to M, to sell and dispose of the said estate by last will as if she were a *feme sole.* After the marriage and death of the wife without will; HELD, that the true character of the contract was not a temporary surrender of the marital rights over the estate during the life of M, but an entire abandonment of them, and therefore he was not entitled to administration upon her estate.

Where the contract of marriage merely suspends the marital rights over the wife's estate during her life, and she fails to exercise the right of appointing an executor, where the right to devise is secured to her by the contract; then the husband is entitled to administration, and to the undisposed personal estate, and choses in action of his wife.

APPEAL from the Orphans court of *Prince Georges* county.

The appellee in this case had obtained from the Orphans court of *Prince Georges* county, on the 19th June, 1833, letters of administration on the personal estate of his deceased wife, *Ann W. Thompson,* formerly *Ann W. Menger.* On the 27th of the same month, the appellants filed their petition, alleging that the letters were improvidently granted to the appellee,—that the appellant's wife was entitled to the same, she being the eldest child of the intestate by a former husband; and exhibiting with their petition an ante-nuptial contract, made between *Thompson* and wife, on the 24th of May, 1828; prayed that the letters of administration, which had been granted to the appellee might be revoked, and that letters, &c. be granted to them.    The contract referred to in the petition, which was duly executed by the parties, after reciting that a marriage was about to be had and solemnized between the said *Thompson* and *Menger,* provided, that all the property and estate of every description, to which the said *Ann W. Menger* was then entitled, or might thereafter become entitled, should be, and was thereby conveyed to a trustee and his hers, in trust, "for the use and benefit of the said *Ann W. Menger,* her heirs and assigns forever, without impeachment of, or for any manner of waste; of all which property to be under, and subject to the exclusive and entire management and control of the said *Ann W. Menger,* her heirs, executors, administrators or assigns, without the interferance in any manner of the said *Robert Thompson.*    And the said *Ann W. Menger,* her heirs, executors, administrators or assigns, to receive and enjoy the rents, issues, and profits thereof. And the said *Ann W. Menger* to have full power and authority to make such disposition of all, or any part of said property, as she at any time may think proper and advisable, and to dispose of the same by last will and testament, in as full, free, and ample manner, as if she were not a

married woman but a *feme sole.*" The prayer of the petition being refused by the Orphans court, the record was brought by appeal to this court.

The cause was argued before BUCHANAN, Ch. J., and STEPHEN, and CHAMBERS, J's.

*T. F. Bowie*, for the appellants.

The Orphans court committed an error in granting letters of administration upon the personal estate of *Ann W. Thompson* to the appellee, because the legal effect and operation of the marriage settlement is to divest him of his marital rights in relation to said property, and standing in the attitude of a stranger in reference to the same, he is not entitled to administration thereon, so long as there are children, or next of kin of the wife, capable of administering on said estate.

Marriage settlements are to be construed so as to carry into effect the *intentions* of the parties; they are mere creatures of equity, and it has always been the practice of the courts, to give to them such an operation as would prevent the infringement of contracts, solemnly made and understandingly entered into. *Meth. E. Church vs. Jaques,* 3 *Johns. Ch. Rep.* 89. No general rule has ever been adopted, as of universal application in the construction of marriage settlements, other than that of the *intention* of the parties: each is to be construed according to its obvious meaning and intention, to be gathered from the whole instrument, and its parts taken together, and must depend upon, and be regulated by the peculiar phraseology used, and the probable motives which appear to have actuated the parties. That *intention*, however, must be derived from the effect and operation, of the legal import of *technical* expressions, for whatever may be the real meaning of the parties, it will not be allowed to prevail against the legal import of technical terms. They have a *fixed* and *definite* meaning, and wherever they occur, whether in deeds, wills, marriage settlements, or elsewhere, they are supposed to

be used in the sense of their technical import.  With this restriction alone, upon the liberty of alienation, a restriction founded in the best policy of the law, and intended as a certain and better security to the rights of property, the courts are always disposed to permit the *intention* of the parties to prevail in the disposition of property.  What then was the intention of the parties to this marriage settlement? and how far does it operate to divest the appellee of his marital rights over the property contained in it?  · There are several *dicta* of learned judges, which speak of the husband as being *next of kin* to the wife, as in the case of *Fettiplace vs. Georges*, 1 *Ves.* 49, also in 3 *Bro. Ch. Ca.* 10, where Ld. *Thurlow* says, "if the wife makes no disposition, the husband takes it as next of kin, not from his marital rights."  But it will be found that this *dictum* of Ld. *Thurlow's* has long since been overruled, and later and numerous cases have decided, that the husband is not *next of kin* to his wife, and that he is entitled to *administration* and her whole personal property, by reason only of his *marital rights.*  If he renounces those rights, the property must be distributed to her next of kin, excluding the husband ; and if he gets administration, he takes the property as trustee for the next of kin, without any beneficial interest to himself.  *Watts vs. Watts*, 3 *Ves.* 244.  *Garrick vs. Camden*, 14 *Ves.* 372.  *Anderson vs. Dawson*, 15 *Ib.* 537. *Bailey vs. Wright*, 18 *Ib.* 49.  1 *Swant.* 39.

The rights of a husband to the property of his wife commence with the marriage, and at her death he can claim nothing but a continuation of those rights.  If, therefore, he releases or renounces those rights, and no right attaches after the death of the wife, by virtue of the marriage, the property must necessarily go to her legal representatives, to the exclusion of the husband.  Now a limitation to *executors* and *administrators*, is, as to personal property, the same as a limitation to right heirs as to real estate.  *Anderson vs. Dawson*, 15 *Ves.* 536.  And as a devise or grant of real estate to a person and "his heirs forever" will pass the

fee simple, convey the *whole interest* in the estate, and leave nothing undisposed of, so will a devise or grant of personal property to a person "his executors and administrators," pass the *entire* interest in the property, and leave, as to it, also, nothing undisposed of. By the terms of this marriage settlement the whole of the wife's property both real and personal, is conveyed to a trustee, "in trust for the use and benefit of the wife, her heirs, executors, administrators, and assigns, under and subject to *her and their exclusive* and entire management and control, *without* the interference in any' manner of the said *Robert Thompson ;*" and coupling the words of limitation used in the deed, with those of exclusion to the husband, it would be difficult to discover by what rule of interpretation, they could be made to relate to the appellee. The *whole interest or estate,* which the wife owned in this property, was conveyed in the first instance to a trustee, and there must appear something in the marriage settlement, by which such an estate was secured or *taken back* to the wife, to which the marital rights of the husband could have attached at the time of her death. But the estate which was secured, or taken back to the wife by way of use, we find to be of the same extent and duration, with the one conveyed in the first instance to the trustee, though of a different nature, the one being a legal and the other an equitable estate. The limitation of the use is, to the wife, her heirs, *executors, administrators,* and assigns, without the interference of the said *Robert Thompson,* extending as effectually to a period of time beyond her death, and making as complete a disposition of the property after her death, to the exclusion of the husband, as if the most express terms had been used for that purpose. It is not like the case of a marriage settlement, where the control and dominion over the property conveyed, is secured to the wife for a limited period of time only ; such as during the *coverture,* as in the case of *Stewart vs. Stewart,* 7 *Johns. Ch. Rep.* 229. But the dominion and control over the property in this case, is secured to the wife with-

out limitation of time. The trustee is to be as much a trustee as to the real estate, for the right heirs of the wife when dead, as for herself when living, and the personal property is to pass into the hands of her executor, if she should appoint one, or of her administrator, if she should die intestate, without the *interference* in any manner of her intended husband, the present appellee. Where then is the estate, to which the marital rights of the husband could have attached upon the death of the wife? It is true, that by the terms of this marriage settlement, a power of appointment either by deed or will is secured to the wife, and she has failed to make either; but it is equally clear, that an effectual disposition of the property after her death, and in case of intestacy is provided for, by the legal effect and operation of the technical terms used; which taken in connection with the words of exclusion to the husband, clearly shew, that by no possibility can they relate to him. The failure of the wife to make an appointment, either by deed or will, cannot destroy the effect of the superadded provision in the deed, the legal intendment of which is, to carry the estate beyond the period of her death, and to the exclusion of her husband. This is not the case then of an undisposed of interest of the wife, and which upon her death without an appointment by her, would revert to the husband by virtue of his marital rights, as in the case of *Stewart vs. Stewart.* In that case there was no provision, either by express words or the use of technical terms, the legal import of which could, by construction, have carried the estate beyond the *coverture* of the parties. On the contrary, the disposition of the property was limited expressly to the period of *coverture* alone, and there is not the slightest expression used, from which the inference can be drawn, that the husband ever intended to renounce his marital rights beyond that period. But the words of this marriage settlement have the effect in law, of creating a disposition of the estate beyond the death of the wife, which it manifestly seems, was not designed to enure to his benefit; for by the

express terms of the marriage settlement, the property is secured to the wife, her *heirs, executors, and administrators, without the interference of the husband.* Have not the Orphans court, by granting letters of administration to the appellee, disregarded the solemn stipulation of the appellee himself, and if he should get the administration, would it be a compliance with his agreement in the marriage settlement, that the *administrator* of the wife, should have the property *without his interference?* If the property had been conveyed in the following manner, "to, and for the sole and exclusive use and benefit of the wife, during her *life or coverture,* and *after her death,* to, and for the sole and exclusive use and benefit, of her *heirs, executors or administrators, without the interference* of the said, &c." it is apprehended there could have been no doubt, that the husband would be excluded, and yet it is difficult to discover any material distinction in law between these words, and those used in the marriage settlement. The appellee can only be entitled to administration on the ground, that by virtue of his marital rights, he is entitled to the property itself. *Stewart vs. Stewart,* 7 *Johns. Ch. Rep.* 247. And the court will not be disposed, in opposition to his solemn engagements, to place such a construction upon the marriage settlement, as will defeat the designs of the parties to it.

*Alexander,* for the appellee.

1. Though the husband may have no beneficial interest in the property, he is still entitled to administration, as the power reserved to the wife in the settlement has not been executed. 1 *Wms. Ex'rs,* 245.

2. But the interest of the husband is a beneficial one, the wife having failed to make an appointment. In that event unless the husband could take, the property would be without an owner. 7 *Johns. Ch. Rep.* 229, 246. 15 *Ves.* 537.

DORSEY, J., delivered the opinion of the court.

The right of *Robert Thompson,* the husband, to the letters of administration granted to him on the estate of his deceased wife is undeniable, unless he be divested of that right, by the deed of settlement executed anterior to wedlock: by which it is declared, that the trustee to whom her real and personal property were granted, should hold the same in trust, "to and for the use and benefit of the said *Ann W. Menger,* her heirs and assigns forever, without impeachment of, or for any manner of waste; all of which property, to be under and subject to, the exclusive and entire management and control of the said *Ann W. Menger,* her heirs, executors, administrators, or assigns, without the interference in any manner of the said *Robert Thompson.* And the said *Ann W. Menger,* her heirs, executors, administrators, or assigns, to receive and enjoy the rents, issues and profits thereof; and the said *Ann W. Menger,* to have full power and authority to make such disposition of all, or any part of said property, as she at any time may think proper and advisable. And to dispose of the same by last will and testament, in as full, free, and ample manner, as if she were not a married woman, but a *feme sole.*" It is manifest on the perusal of this deed, that it is not from the hand of an experienced, skilful conveyancer. It appears to have been inartificially drawn, having omitted a clause usually embraced in such a conveyance, by which the ultimate disposition of the property, in case of the wife's death without disposing thereof in her life-time, by last will and testament or otherwise, would be provided for. Had such an omission occurred in an *ante-nuptial* contract in the usual form, securing her property to the wife for life, without any interference or control of the husband, and giving to the wife the power of testamentary, or other disposition in her life-time, as in the case of *Stewart vs. Stewart,* 7 *Johns. Ch. Rep.* 228, the right of the husband to the property, and of the administration thereof, over which the wife had failed

Ward *et ux. vs.* Thompson.

to exercise her power of appointment, could not be controverted. The marital rights of the husband having been suspended only during the life of the wife, after her death they are as efficaciously revived, as regards the future, as if no such suspension had ever taken place. As a necessary consequence, he is entitled to all the undisposed of personal estate, and *choses in action* of his deceased wife. But such is not the condition of the husband in the present case. He has not made a temporary surrender of his marital rights over the estate in question, during his wife's life; but has abandoned them forever. His agreement is that, "without the interference in any manner of the said *Robert Thompson,*" "all of which property to be under, and subject to the exclusive and entire management and control of the said *Ann W. Menger,* her heirs, executors, administrators, or assigns," "and the said *Ann W. Menger,* her heirs, executors, administrators, or assigns, to receive and enjoy the rents, issues, and profits thereof." In the trust estates of the wife, the husband is entitled to a life-estate, as tenant, by the courtesy. Could it be contended, that the appellee in this case might claim in that character, against the heirs of his wife, in whose favor he had renounced all his rights, and had expressly agreed that they should have "the exclusive and entire management and control" of the premises in question, and that they should "receive and enjoy the rents, issues and profits," arising therefrom? We think not. Upon what principle then can the appellee's claim to the personalty be sustained? He has made the same renunciation and agreement, in favor of the executor or administrator, that he did in favor of the heirs of *Mrs. Menger,* and is equally barred in both cases.

The order of the Orphans court, for the granting of letters of administration to *Robert Thompson* on the estate of *Ann W. Thompson* is reversed, and the record in this case remanded, that letters of administration may be granted by the said Orphans court, to the person thereto entitled.

ORDER REVERSED AND PROCEDENDO AWARDED.