TOBIAS G. TOWNSHEND, Adm'r *c. t. a.* of HENRY
M. CHEW, *vs.* HENRY C. MATTHEWS.

By an ante-nuptial settlement the real and personal estate of the wife was
conveyed to a trustee in trust, "for the sole and exclusive use" of the wife,
"her *heirs and assigns*," the wife "and *her assigns*, during her life, to take
and receive all the rents and profits" thereof, "to and for her and their
own use respectively," with power to the wife to dispose of the property.
The wife died without making any disposition of the property under this
power, leaving several children and her husband surviving her. HELD:

1st. That this settlement *excludes* the husband from any title to the *property*
belonging to the *wife at the time it was executed*, but he is entitled to what-
ever *issues or profits* accrued and were actually received by the wife *during
coverture.*

2nd. That two negro slaves, belonging to the wife at the date of the settle-
ment, passed to her representatives, but the *children* of such negroes born
*during the coverture*, being "*issues and profits*," go to the surviving husband.

APPEAL from the Circuit Court for Prince Georges county.

*Replevin*, by the appellee against the appellant, to recover
four negro slaves, *Sophia, Anthony*, and the children of Sophia,
*Mary* and *John*. Pleas, *non cepit*, property in defendant, and
property in a stranger.

*Exception*. The controversy in this case was as to the proper
construction of a marriage contract between Henry M. Chew
and Elizabeth Ann Haw, executed on the 14th of January
1833. The terms of this contract and the facts of the case are
fully stated in the opinion of this court. The defendant ex-
cepted to an instruction granted by the court below, (CRAIN,
J.,) which is also set out in the opinion of this court, and the
verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., ECCLE-
STON and MASON, J.

*A. B. Hagner* and *Alex. Randall* for the appellant, argued:

1st. That by the terms of the marriage settlement its opera-
tion ceased upon the death of the wife, without having executed
the power reserved to her, of making disposition of the property
by deed or will, and the personal estate therein mentioned

became the property of her surviving husband in virtue of his marital rights, there being no express exclusion of these rights in the deed of settlement. 7 *Johns. Ch. Rep.*, 247, *Stewart vs. Stewart.* 1 *Md. Ch. Dec.*, 191, *Jones vs. Brown. Ibid.*, 212, *Conn vs. Conn.* 6 *Md. Rep.*, 375, *Turton vs. Turton.* 5 *Ves.*, 520, *Lumb vs. Milnes.* 3 *G. & J.*, 504, *Carroll vs. Lee.* 1 *Wms. on Exc'rs*, 509. 1 *Bright on Husband & Wife*, 137. 2 *Do.*, 206. *Clancy on Husband & Wife*, 262. This case differs from that of *Ward vs. Thompson*, 6 *G. & J.*, 349; in that case the words of the settlement are, *"heirs, executors, administrators and assigns,"* but in this they are different, the words *executors* and *administrators*, showing a design to transmit the estate to the *personal representatives* of the wife, are omitted. The words are, "heirs and *assigns.*" The husband is included in the word *"assigns;"* he is the *assignee*, in law, of the wife. *Act of* 1798, *ch.* 101, *sub-ch.* 5, *sec.* 8. 2 *Wms. on Exc'rs*, 511. *Jac. Law Dic., Assigns.* 2 *Roper on Hus. & Wife*, 201.

2nd. That the instruction granted by the court was erroneous:—1st. Because it gives the *increase* of the negroes born after the marriage to the trustee, whereas they belong to the husband. 9 *G. & J.*, 79, *Hope vs. Hutchins.* 2nd. It does not notice the fact that the wife had a right to make a will or deed of the negroes. If she did so she may have left them to the husband, or conveyed them to some one who conveyed them to him. 3rd. It does not notice whether the children of Mrs. Chew survived the husband. If they died before him, he, as their representative, was entitled to the negroes. 4th. *Non cepit* is pleaded, and there should have been evidence that Chew died in Prince Georges county. 3 *Starkie on Ev.*, 1295. The *onus* is upon the plaintiff to prove the whole case, 11 *G. & J.*, 80, *Warfield vs. Walter.* 2 *Saund. on Pl. & Ev.*, 789.

*Brice T. B. Worthington* for the appellee, argued:

That by force of the *settlement itself* the property in question was disposed of *beyond* the *death of the wife*, in her *heirs*, and the husband thereby excluded himself and his *heirs* from any

future interest or title therein, and the legal title continues in the trustee for the use of the wife's heirs, and consequently the right of action was in him to recover possession. *Hill on Trustees*, 272, 274. The wife had the entire estate when the contract was made, and the contract conveys the *entire estate* of the wife as it *then existed;* it is not taken back. The quantity of interest conveyed corresponds with the intention to part with and keep out of her the entire estate in exclusion of the husband. The conveyance is in trust for the wife and her *"heirs,"* which term *quoad* personal property means *"next of kin."* 6 *G. & J.*, 349, *Ward & Wife, vs. Thompson.* There are three periods named in the settlement for the vesting of the interest:—1st, before marriage; 2nd, after marriage, and 3rd, after the wife's death. The enjoyment and receipt of the profits for life in the wife and her *assigns,* qualify the nature of the equitable interest during her life. *Hill on Trustees,* 385. 4 *Md. Rep.*, 532, *Holmes vs. Mitchell.* The *children* of Sophia, mentioned in the contract, go over with the other trust estate to the heirs of the wife. 9 *G. & J.*, 79, *Hope vs. Hutchins.* See, also, in support of these views and this construction of the settlement, *Lewin on Trusts,* 7. 14 *Ves.*, 487, *Gwynne vs. Muddock.* 2 *Hill's Ch. Rep.*, 1, *Allen vs. Rumph.* 1 *Jac. & Walk.*, 388, *(note,) Vaux vs. Henderson. Hill on Trustees*, 385. 3 *G. & J.*, 504, *Carroll vs. Lee.* 5 *Ves.*, 399, *Holloway vs. Holloway.*

ECCLESTON, J., delivered the opinion of this court.

This is an action of replevin, instituted by the appellee against the appellant to recover four negroes.

Prior to an examination of the prayer granted at the instance of the plaintiff below, and which is the basis of this appeal, we will state our views of the law as applicable to the case, supposing the jury should have believed the evidence to be true as set forth in the record.

In contemplation of an intended marriage between Henry M. Chew of Prince George's county, and Elizabeth Ann Haw of Georgetown, and in consequence of an agreement entered into between the parties, a deed was duly executed on the

14th of January 1833, between the said Henry M. Chew of the first part, Elizabeth Ann Haw of the second part, and the appellee, Henry C. Matthews of the third part; by which the real and personal estate of Elizabeth Ann were conveyed to the said Matthews and his heirs, subject to the uses, trusts and purposes expressed in the deed: "that is to say, to the said Elizabeth Ann, her heirs and assigns, until the said intended marriage shall (should) be had, and from and immediately after the solemnization thereof, in trust and for the sole and exclusive use of the said Elizabeth Ann, her heirs and assigns, the said Elizabeth Ann and her assigns, during her life, to take and receive all the rents, issues and profits, of all and singular the real and personal estate, before mentioned and described, to and for her and their own use respectively, and subject to such disposition, conditions, provisoes, restrictions and limitations, as the said Elizabeth Ann, whether covert or sole at any time or times hereafter, (thereafter,) by any deed or deeds," &c., might make.

After the 14th of January 1833, the marriage took place; and in 1839, Elizabeth Ann, the wife, died, leaving several children, and her husband surviving her.

The plaintiff offered evidence to prove, that negroes Sophia and Anthony, mentioned in the declaration, were originally the property of Elizabeth Ann Haw, before and at the time of her intermarriage with Henry M. Chew; and that the other slaves mentioned in the *nar*, are the children of the said Sophia, born during the coverture of the said Elizabeth Ann.

The defendant below offered proof, that the said negro woman Sophia and her children, and Anthony, remained in the possession of Henry M. Chew, from the time of his wife's death up to the period of his decease, which occurred in the year 1851; and that these negroes were in the possession of the defendant, as administrator of H. M. Chew, when the present action of replevin was instituted in February 1854.

No appointment or disposition of the property was made by Elizabeth Ann, under the power or authority contained in the deed.

The plaintiff below insists, that he has a right to recover all

the negroes mentioned in the *nar*, because under the provisions of the deed, the legal title to them is in him. This the defendant denies, and contends that the deed does not manifest, with sufficient clearness, an intention to exclude the husband's marital rights, beyond the life of the wife, if to that extent; and at her decease, without having disposed of the negroes, they vested in the husband.

In the case of *Waters and Others, vs Tazewell*, 9 *Md. Rep.*, 291, and other cases there cited, the deeds on which those decisions were based, were held sufficient to show an intention of carrying the title to the property beyond the period of the wife's death, and to exclude the husband. Comparing those deeds with the language made use of in the one before us, we think it should be construed as having a similar effect; at all events in regard to the *corpus* of the trust property; that is, negroes Anthony and Sophia.

In our opinion the deed excluded the husband from any title to the two elder negroes, and under the circumstances, he only held them permissively, whilst in his possession; consequently his administrator could have no valid claim to them. The deed conveyed the legal title to the trustee, under which he had a right to recover possession, so as to enable him to discharge himself from the trust, by a transfer and delivery of the property to those entitled under the deed.

With regard to the *corpus* of the estate, the settlement declares that after the marriage, the trust shall be "for the sole and exclusive use of the said Elizabeth Ann, her heirs and assigns:" and then goes on to provide, "the said Elizabeth Ann and her assigns during her life, to take and receive all the rents, issues and profits of all and singular the real and personal estate before mentioned and described, to and for her and their own use respectively." After which follows the provision, giving to her authority whether covert or sole to dispose of the property.

Thus it appears, that whilst the *corpus* is for the sole and exclusive use of Elizabeth Ann, *her heirs and assigns*, without any limitation or restriction in relation to time, it is *during her life*, that she and her *assigns* are to take the rents, issues

and profits, for her and their own use respectively. Under
such a trust, we think the husband became entitled to what-
ever issues or profits accrued, and were actually received by
the wife during the coverture, if they were not assigned or
transferred by her, but at her decease remained in her posses-
sion or that of the husband. 2 *Bright on Husband and Wife*,
224, *sec.* 13, and cases cited in *note (e.)* *McQueen on Hus-
band and Wife, marginal-paging* 286, 298, 299, in 66 *Law
Lib.*

Negroes Mary and John, as children of Sophia, are issues
or profits of the trust property, according to the Maryland de-
cisions. They were born during the coverture, and at Mrs.
Chew's decease, were held as slaves in the family of H. M.
Chew; he and his wife up to the period of her death having
lived together as husband and wife. She made no assignment
or disposition of those children, and after her decease they be-
longed to the husband. This being so, the plaintiff cannot
recover them in this suit.

During the trial the following instruction was asked. "Up-
on the whole of this evidence, the plaintiff then prayed the
court to instruct the jury, that if they find from the evidence,
that Henry M. Chew and Elizabeth Ann Haw, were married
after the 14th of January 1833, and that negroes Sophia and
Anthony, now in controversy, are the same negroes mentioned
in the marriage contract, entered into between Elizabeth Ann
Haw and Henry M. Chew, dated 14th of January 1833, herein-
before offered in evidence; and that the other negroes Mary
and John, were children of the said Sophia, born after the in-
termarriage of the said Elizabeth and Henry, then, that the
plaintiff is entitled to recover, notwithstanding they find, that
the said negroes were in possession of the said Henry, from
the time of his marriage and their birth respectively, until his
death." Which instruction, "the court gave to the jury, and
directed them to find a verdict for the plaintiff, if they so found
the facts." To this decision the defendant excepted, and now
insists upon its reversal, alleging it to be erroneous.

The *nar* claims four negroes; and the prayer, as granted,
instructed the jury, that if they should find certain facts to

exist, the plaintiff was entitled to recover, notwithstanding they should believe the negroes were in possession of H. M. Chew, "from the time of his marriage and their birth respectively, until his death." Such an instruction authorized the jury to understand it, as including all the negroes mentioned in the *nar*. If the court meant less than all, the instruction furnished the jury with no means of ascertaining how many less.

From what has been said it will appear, that conceding the evidence sufficient to have justified the jury in finding the facts as set forth in the prayer, still, in our opinion, the plaintiff could have no right to recover negroes Mary and John; and therefore the defendant is entitled to a reversal, upon the instruction given.

*Judgment reversed and procedendo awarded.*