JOHN HUTCHINS and ABRAHAM G. BOWEN, Adm's of ANNE HOOPER and others, *vs.* BASIL S. DIXON, Exc'r of JAMES HOOPER.

A husband executed a deed which recites that he was "disposed to *invest* his wife *again* with all the property" he acquired by marriage with her, "so that the same may be for *her exclusive use* and *benefit as though she were a feme sole*," and then conveys the property both real and personal, subject nevertheless to any debts she was answerable for at the time of the marriage, to a trustee *in trust* "for the use of the wife, during the life of the husband, to be disposed of in any manner she shall direct *during coverture;* and if she survives the husband and makes no disposition thereof by last will and testament, then the same to descend to her *legal heirs and representatives* in the same manner as if they had *never been married;* provided, in case the husband died first, she should set up no claim to any part of his estate." On the *same day* the trustee executed a deed, which refers to the deed of trust, and recites that the wife "had *directed* him to convey all said property to her," and then conveys the same to *the wife*, "to her sole use and benefit," to hold the same "for her sole use and benefit *during her natural life*, and after her death, in case she should not dispose of the same by last will and testatment, to her *heirs and legal representatives forever*, subject nevertheless to the provisions and conditions contained in the said deed of trust." The husband *survived* the wife and then died.    HELD:

1st. That as the first deed did not make any provision for the event of the *wife's dying first* without disposing of the property as authorised by its terms, if the second deed had not been executed, and the wife had died first *intestate*, the title to the personal property would have been restored to the husband.

Hutchins, *et al.*, *vs.* Dixon, Ex'cr of Hooper.

2nd. But the second deed having been executed by the *direction* of the wife, and as both deeds *clearly manifest the intention* of the parties to carry the *title* to the property *beyond the period of the wife's death*, and to exclude the husband, his estate is entitled to no part of the personal property conveyed by such deeds.

3rd. It was not *indispensable* to make the wife a party to the second deed by her written assent; her *acceptance* of it bound her and her husband, and having been *acknowledged* and *recorded*, it must be treated as having been *delivered* to and *accepted* by her, in the absence of proof that she refused to accept it.

*Technical words* are not necessary to create a separate estate in a *feme covert*, but adequate language must be employed to manifest a *decided intent* to transfer a separate interest, and to exclude the husband, and this effect may be produced without the interposition of a trustee.

When the words "next of kin," "heirs" and "representatives," are used in marriage settlements to designate the persons who are take at the wife's death, they are generally construed as having been so employed for the purpose of excluding the *husband*.

Deeds must interpret themselves without reference to the *acts* of the parties: the court cannot be aided in the construction of any agreement by the acts which the parties may have done under it, nor is a party bound by any construction which he may have put upon the instrument.

A *feme covert* may have a separate estate in *personal property* without a *trustee;* in such case equity will treat the *husband* as trustee for her benefit.

The *acknowledgment* and *recording* of a deed import *delivery*, and are *prima facie* evidence of all circumstances necessary to give it validity.

APPEAL from the Equity Side of the Circuit Court for Calvert county.

James Hooper, in the year 1836, married Anne Simmons, who was then possessed of considerable real and personal property, and, on the 10th of February 1837, the husband executed a deed to Bowen, as trustee, which recites, that "whereas the said James is disposed to *invest his said wife again* with all the property real and personal *which he acquired by virtue of his intermarriage* with her, so that the same may be for *her exclusive use and benefit as though she were a feme sole;*" and then conveys all said property, which is particularly described, ("the said property nevertheless to be subject to any debt that the said Anne was in any manner answerable for at the time of her said marriage,") to Bowen, *"in trust* for the use of the said Anne, *during the lifetime of the said James,*

to be disposed of in any manner in which she shall direct *during her coverture;* and also if the said Anne should not, if she survives the said James, make any disposition of the same property by last will and testament, then the same to descend to the legal heirs and representatives of the said Anne in the same manner as if they had never been married. Provided, nevertheless, that in case the said James shall die before the said Anne, that she shall set up no claim to any part of the property real or personal, which he may die possessed of, which if she does, these presents shall be utterly null and void, and all the personal property above described, shall revert back again and be considered as a part of the estate of the said James, any thing herein contained to the contrary notwithstanding." This deed was executed by the *husband alone* and was duly acknowledged and recorded.

On the *same day,* Bowen, the trustee, executed a deed which recites the execution of the previous deed of the same date, and that the trustee was thereby authorised and required to convey the said property as the said Anne might direct, and "that she hath directed him to convey all the property mentioned in the said deed of trust, to her," and then conveys the same to the said Anne, "to her sole use and benefit," subject to all the provisions and conditions in the deed of trust; "to have and to hold the same unto the said Anne Hooper, for her sole use and benefit *during her natural life,* and after her death, in case she should not dispose of the same by last will and testament, *to her heirs* and *legal representatives* forever; *subject* nevertheless to the *provisions and conditions contained in the said deed of trust.*" This deed was executed by *Bowen alone,* and was duly acknowledged and recorded.

On the 3rd of November 1843, two other deeds were executed, the first from Hooper and wife, conveying a tract of land belonging to the husband to a purchaser for a valuable consideration, which was duly executed by the *husband and wife,* acknowledged and recorded; the second from the *husband* to Weems and wife, conveying the property mentioned in the deeds of February, 1837, to the said grantees during the life of the said Anne Hooper, *in trust* to and for the bene-

fit of the said James Hooper and Anne Hooper, his wife, to be used and enjoyed by them so long as the said Anne Hooper shall live, and at her death to be disposed of as she, the said Anne Hooper, shall direct by her last will and testament, the power to make which is hereby expressly granted to her." This last deed was executed by the *husband alone,* and though recorded does not appear to have been *acknowledged,* but was proved to have been executed with the *assent of the wife.*

Anne Hooper, the wife, died *intestate* in December 1850, leaving her husband surviving her, who died in September 1852, and his executor took possession of all the personal property mentioned in the preceding deeds, and claimed the same as part of the husband's estate. The appellants, who are the administrators, next of kin and heirs at law of the wife, then filed the present bill, claiming this property and praying for an account of the same and the profits thereof, from the appellee as executor of the husband, since the death of the wife.

This bill alleges in substance, that after their marriage, a *post-nuptial agreement* was made between the husband and wife to the effect that *each* should retain the property real and personal, which they were respectively entitled to before marriage, free, clear and discharged of all manner of claim of the *other,* and to have full power to sell and dispose of it in the same manner, as if there had been no marriage; and that to effectuate this agreement the deeds of February 1837 were executed; and still further to carry out the same, the subsequent deeds of November 1843 were also executed, and that these deeds, especially the first two, constitute a valid *post-nuptial settlement* under which the complainants are entitled to the property in question.

The answer of the executor says he knows nothing of the allegations of the bill, and therefore cannot admit but denies them. Some parol testimony was taken by the complainants in support of their construction of the deeds, and as sustaining their view of the intent with which they were executed, which need not be stated, as no reliance was placed thereon in the decision of the case.

The court below *(Brewer, J.,)* decided, that by the true

construction of these deeds the property in question did not pass to the representatives of the wife, but belonged to the estate of the husband, and passed a decree dismissing the bill, from which the complainants appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and TUCK, J.

*Chas. S. Parran and Alex. Randall,* for the appellants argued:

1st. That the two deeds of February 1837, constitute a valid *post-nuptial settlement* made by James Hooper and Anne Hooper, his wife, for a *valuable consideration,* the *first* deed *creating* and the *second directing* the trusts. 32 *Law Lib.,* 194. 2 *Md. Ch. Dec.,* 360, *George vs. Spencer.* 3 *G. & J.,* 504, *Carroll vs. Lee.* 9 *Md. Rep.,* 480, *Stockett, Adm'r of Locke vs. Holliday & wife.*

2nd. That this *second* deed was executed by Bowen, the trustee, in pursuance of the very terms of the power conferred on him by the first deed, which says, "that this property is to be disposed of *in any manner* in which she, the said Anne Hooper, shall direct *during coverture.*" 1st. Because the recitals in the second deed show, that Mrs. Hooper directed the conveyance.    2nd. Because even if this second deed had been a breach of trust, yet if not fraudulent and void, it must avail in a court of law.    10 *G. & J.,* 457, *Matthews vs. Ward.* 3rd. Because the *presumtion* of law is, that the trustee complied with his duty.    2 *G. & J.,* 130, *Shilknecht's Lessee vs. Eastburn.*

3rd. By the *second* deed it was provided, "in case the said Anne Hooper shall not dispose of the said property by last will and testament," it should go "*to her heirs and legal representatives,*" and having died without making such disposition by last will and testament, this property did accordingly vest in the appellants, who are her *legal heirs and representatives.* Both deeds manifest the clear intention of the parties to carry the title to this property *beyond the period of the wife's death,* and the *marital rights* of the husband are, therefore,

excluded. 6 *G. & J.*, 349, *Ward vs. Thompson.* 9 *Md. Rep.,* 291, *Waters vs. Tazewell.* 10 *Do.*, 251, *Townshend vs. Matthews.* 6 *How.*, 70, *Marshall vs. Beall. Roper on Husband & wife,* 237, 238, in 32 *Law Lib.*, 199, 200. 2 *Hill (S. C. Rep.,)* 3 *Allen vs. Rumph.* 3 *Ves.*, 244, *Watt vs. Watt.* 18 *Do.*, 49, *Bailey vs. Wright.* 2 *Bright on Husband & wife,* 203.

4th. That the *manifest intention* of the parties will be executed by our construction of these deeds, and a court of equity will favorably view such deeds in order to accomplish the *intention* of the parties. 2 *Story's Eq.* sec. 1381. 3 *Md. Rep.,* 552, *Ware vs. Richardson.*

5th. It has been objected that the *wife* was *not a party* to the *first* deed, and that there is no evidence of her acceptance in writing of the *second.* To this we reply that it is not necessary the wife should be a party; if she accepted the second deed it was binding both upon her and her husband, and that she did *accept* it is established by the facts that it was *acknowledged* and *recorded,* which formalties are *prima facie* evidence of every thing necessary *to its validity;* they import *delivery* and *acceptance.* Again, it has been objected to this *second* deed that it does not provide a *trustee* to hold the legal title and continue the trust. The reply to this is, that a *feme covert* may have a separate estate in *personalty,* (which is the kind of property here in dispute,) without the intervention of a trustee; the *husband* will in such cases be treated in equity as trustee for the wife. 2 *Story's Eq.*, secs. 976, 1380. 3 *Md. Rep.*, 550, *Ware vs. Richardson.* 2 *Kent's Com.*, 162, 163.

6th. That the husband, James Hooper, after the execution of the second deed of February 1837, had no power or control whatever over this estate, and that the deed to Weems and wife, of November 1843, executed by him alone, cannot operate upon this estate in any way, and need not be considered by this court.

*N. Brewer, Jr., and Jno. M. S. Causin,* for the appellee.

There is *no evidence* of the agreement alleged in the bill, either in the *deeds* or in the testimony taken under the com-

mission; the complainants must rely, therefore, upon the effect and operation of the deeds themselves. Now in regard to these deeds we insist: 1st. That the deed to Bowen, of February 1837, executed by the *husband alone*, to which the wife was *not a party* is a mere *voluntary conveyance*, without mutuality, and with no *valuable consideration* passing from the wife to the husband therefor, *(Lewin on trust,* 22, 489, 499,) and the husband is only bound by it to the *extent* of the interest he thereby parted with.

2nd. That this deed gives the wife entire control of the personal property in question, *during coverture,* and the power on certain conditions of disposing of it by last will and testament in case of her surviving her husband, but clearly makes *no provision* in reference thereto, in the event of the *husband surviving her,* which has occurred. 4 *Yerger,* 435, *Morgan vs. Elam.*

3rd. That a married woman has no power over her separate estate, but what is expressly given her by the settlement, and as this deed provides only for the dominion of the wife over the personalty during coverture, and conditionally in case of her surviving her husband, and makes no provision whatever for the event of the husband's surviving, upon the death of the wife the rights of the husband suspended during coverture are *revived,* and at his death the property goes to *his legal representatives.* 2 *Kent's Com.,* 164, 166, *note (a.)* 65 *Law Lib.,* 370. 6 *G. & J.,* 349, *Ward vs. Thompson.* 1 *Md. Ch. Dec.,* 191, *Jones & White, vs. Brown.* 4 *Do.,* 68, *Tarr & Blass, vs. Williams. Ibid.,* 417, *Williams vs. Donaldson.* 5 *Md. Rep.,* 219, *Miller & Mayhew, vs. Williamson.* 1 *Johns. Ch. Rep.,* 450, *Methodist Episcopal Church vs. Jacques.* 7 *Do.,* 245, *Stewart vs. Stewart.* 1 *Rawle,* 231, *Lancaster vs. Dolan.* 2 *Whart.,* 11, *Thomas vs. Folwell.* 4 *Yerger,* 375, *Morgan vs. Elam.* 3 *Dessauss,* 417, *Ewing vs. Smith.* To exclude the marital rights of the husband the *intent* must be clear and explicit, not inferred from *vague expressions,* but the words used must be *expressly* designed and adapted to effectuate such a purpose. *McQueen on Husband & Wife,* 82. 6 *How.,* 79, *Marshall vs. Beall.* 1 *Ves. Jr.,* 364, *Smith vs. Maitland.*

4th. That this deed is void, because the wife was not a party to it, and there is no *proof* of its *delivery*, nor is there any evidence of its acceptance. It does not come within that class of deeds which are presumed to be *accepted* because of being *beneficial* on their face. (12 *Johns.*, 421, *Jackson vs. Phipps.* 2 *Greenlf. on Ev.*, sec. 297.) It is a deed coupled with *conditions*, that the property shall be responsible for the wife's debts, and that she will abandon her dower and thirds, and is, therefore, *prejudicial* to the interests of the wife upon its face; but we need not prove that it is so prejudicial, it is for the other side to prove that it was beneficial. 4 *Mason*, 207, *Halsey vs. Whitney.* 20 *Johns.*, 187, *Jackson vs. Bodle.* 5 *Conn.*, 300, *Camp vs. Camp.*

5th. That the *second* deed of February 1837 cannot avail the complainants. It is clear from all the authorities before cited, that a *feme covert* can only dispose of her separate estate, in pursuance of the terms of the instrument settling it upon her. (*Lewin on Trusts*, 498, 499.) Now this *first* deed, if valid, clothes the trustee with a trust and a *power* to convey, as the wife *shall direct*, during coverture; in other words, it creates a trust with a power in the wife annexed. This *second* deed contains no *direction* by the wife; she is not a party *grantor* in it, and did not assent to it *in writing*; nor is there any thing in the deed itself, or in the record, showing her *assent* to it in *any* *manner*; which assent must be manifested in a *clear* and *distinct manner*, and without such assent neither she nor her husband can be bound by its provisions. It cannot, therefore, be regarded as a proper execution of the *power* vested in the trustee by the first deed. Again, it provides *no trustee* to hold the legal title, the *husband was no party to it*, and it cannot, therefore, bind him, and in fact it *destroys* and *extinguishes* the *trusts* created by the first deed. Finally, it only professes to convey the property subject to *all* the *provisions* and *conditions* contained in the first deed, and can, therefore, have no other or greater effect than that deed had.

6th. The complainants are, therefore, compelled to resort to the deed of November 1843, to Weems and wife, which they have proved was executed with the *assent of the wife*, she

being present and advising its execution, as in *pursuance of the trusts* of the *first deed*, and under this deed the complainants must rest their claim. If driven to this deed the case is at an end, for upon all the authorities, it gives to the wife *no such interest* as the appellants now set up. *Hill on Trustees,* 424. 65 *Law Lib.*, 364, *(marg.)* 66 *Do.*, 290, 297, 298, *(marg.,)* in addition to the cases already cited.

TUCK, J., delivered the opinion of this court.

The deed from Hooper to Bowen of the 10th of February 1837, shows a plain intent to restore to his wife the property she owned at the time of the marriage, "so that the same might be for her exclusive use and benefit, as though she were a *feme sole;*" and this design is further indicated by the provision, that in the event mentioned in the deed it should pass to "her legal heirs and representatives in the same manner as if they had never been married." Words better adapted to the purpose of divesting himself of the title could not have been employed; subject, however, to the conditions that the property should be answerable for her debts, and that she should not set up any claim to his estate if she survived her husband. "Technical words are not necessary to create a separate use, but adequate language must be employed in making a gift of this kind to manifest a decided intention to transfer a separate interest, to show that the husband was not to enjoy what the law would otherwise give him." And the effect may be produced "without the interposing office of a trustee." *Carroll vs. Lee,* 3 *G. & J.,* 504.

This deed, however, did not make any provision for the event of her dying first, without disposing of the property as authorized by its terms; and if the deed from Bowen to Mrs. Hooper, of the same date with the other, had not been executed, and Mrs. Hooper had died without exercising that power in any other manner, the title to the personal property would have been restored to James Hooper. This is very clear according to the adjudged cases. *Stewart vs. Stewart,* 7 *John. Ch. Rep.*, 229. *Pickett vs. Chilton,* 5 *Munf.*, 467. *Ward vs. Thompson,* 6 *G. & J.,* 349. *Waters vs. Tazewell,* 9 *Md. Rep.*, 291.

But the wife having, as alleged by the appellants, made an appointment by requiring the trustee to execute the second deed, the appeal must be determined by the construction and effect of that instrument, because as James Hooper gave authority to dispose of the property, her acts in that regard must bind those claiming under him.

In the case of *Marshall vs. Beall*, 6 *Howard*, 70, the court decided in favor of the wife's title, because it appeared by the deeds under consideration, "that the intention of the parties was, to carry the title of the fund beyond the period of the wife's death, and to exclude the husband." And this principle was recognized as a test in the cases of *Waters vs. Tazewell*, 9 *Md. Rep.*, 291; and *Townshend vs. Matthews*, 10 *Md. Rep.*, 251. It is true, that in those cases, and in *Ward vs. Thompson*, 6 *G. & J.*, 349, the use or separate estate was created for the wife, her executors, administrators and assigns, free from the control of the husband, whereas in the deed from James Hooper it is not so conveyed. But as we are dealing with the intention of the parties, and this is to be gathered from the whole language employed, and not by resorting merely to technical terms, we are not to narrow the construction on account of the absence of words of limitation, but must give such effect to others, if they manifest a design to extend the title beyond the wife's death. And this we think appears, not only from the words already quoted from the recital in the deed, but also from the trustee's power to dispose of the property in any manner she might direct during the coverture, the power to make a testamentary disposition; and if she survived the husband the limitation to her heirs and representatives, in the same manner as if the parties had never been married. The wife, in neither of the cases referred to, could have exercised much greater power over the property than was conferred upon Mrs. Hooper by the deed of her husband. If, therefore, the second deed passed the title beyond the period of Mrs. Hooper's death, the effect must be to exclude the marital rights.

By this conveyance Mrs. Hooper took the property "for her sole use and benefit during her natural life, and after her death, (in case she should not dispose of the same by last will and

testament,) to her heirs and legal representatives," subject to
the conditions mentioned in the first deed.    We think this in-
strument also shows an intention on the part of the wife, who
alone had the power to direct the disposal of the property, that
her title should extend beyond her death, to the exclusion of
the husband.    She might have so directed by her will, which,
we need scarcely remark, could not have operated before that
period, and in default of a will the ultimate enjoyment of the
property was provided for in such a manner, that the husband
could not have participated therein under either of the designa-
tions employed.    If there had been no limitation after her
death the property would have gone to the husband by virtue
of the marriage, because his rights are not to be defeated, un-
less there be an intent to that effect, and when the words,
"next of kin, heirs, representatives" are used in settlements of
this kind, to designate the persons who are to take at the wife's
death, they are generally construed as having been so employ-
ed for the purpose of barring the husband.    *Stewart vs. Stew-
art*, 7 *Johns. Ch. Rep.*, and this construction was adopted in
*Waters vs. Tazewell*, as to the deeds then under considera-
tion.    We cannot doubt that such was the object of this second
deed.    James Hooper manifestly intended by his deed to re-
store to his wife the property which he had acquired by the
marriage, and she, in execution of the power conferred by him,
had it conveyed to herself by what, in equity, is deemed a
separate estate, to be enjoyed by herself during life, and after-
wards by a designated class, which, as we have said, does not
include the husband.    This must have been done for the pur-
pose of defeating the title of the husband and of any persons
claiming under him.    The first deed looks to the husband's
interest only to the extent of protecting him against the wife's
debts, and any claim by her against his estate, as his widow;
and the second deed secures to him the same interest and no
greater.    The appellee's construction would defeat, not only
the purpose we have imputed to Mrs. Hooper, but the very
object of James Hooper himself, as expressed in his own deed,
by vesting in her the same title that she had before the mar-
riage, and thereby subjecting the property to all the incidents

of the coverture, in the same manner as if the deeds had not been executed, whereas the design was that she should hold it in the same manner as if they had never been married.

In the case of *Ward vs. Thompson*, 6 *G. & J.*, 349, the court allude to the clause of the marriage settlement by which the husband agreed that the wife should hold the property "without the interference, in any manner, of the husband," but we do not consider that the case was decided on that clause alone, for the court had previously spoken of the effect of such deeds where "the ultimate disposition of the property in case of the wife's death without disposing thereof, in her lifetime, by last will and testament, or otherwise," is not provided for. In such cases, the court say, the property would go to the husband. It is fair to assume the court also meant, that where the ultimate enjoyment was provided for, as in this case, the husband would not be entitled.

We place no reliance upon the circumstance that James Hooper afterwards attempted to dispose of the property by the deed of the 3rd of November 1843, as casting any light on the question of intention.

The deeds must interpret themselves without reference to the acts of the parties. "A court cannot be aided in the construction of any agreement by the acts which the parties may have done under it, nor is a party bound by any construction which he may have put upon the instrument." *Ringgold's Case*, 1 *H. & G.*, 74. He parted with his title by the first deed, and we do not perceive he acquired any interest afterwards on which his subsequent deed could operate.

It was suggested in argument, that the second deed does not provide a trustee to hold the legal title. This assumes that the deed destroyed the trusts created by the first, which point we need not decide. But if this be the effect, it is clear, that a *feme covert* may have a separate estate in personalty, which is the kind of property in controversy here, without a trustee, in which case equity will treat the husband as trustee for her benefit.

The objection that Mrs. Hooper did not assent in writing to this deed, and that neither she nor James Hooper were bound

by its provisions, cannot avail the appellee. The better practice in such cases is to make the wife a party by her written assent, but this is not indispensable. If she accepted this deed that act would bind her as well as James Hooper. We must treat the deed as having been delivered to and accepted by her. It was acknowledged and recorded, and is, therefore, *prima facie* evidence of all circumstances necessary to give it validity. 6 *H. & J.*, 234. *Warner vs. Hardy*, 6 *Md. Rep.*, 525. In *Stewart vs. Redditt*, 3 *Md. Rep.*, 67, it was decided, that these formalities import delivery to the grantee.

The result of these views is, that the estate of James Hooper does not embrace the property in question, and that the decree must be reversed and the cause remanded, under the act of 1832, ch. 302, sec. 6.

*Decree reversed and cause remanded.*