JOHN S. MOODY vs. CHARLES G. HALL and GEORGE D. HALL, Infants, by their Guardian JOHN P. POE, and others.

*Construction of an Ante-nuptial Deed—Exclusion of Husband.*

Whenever it appears from the face of a deed executed in contemplation of marriage, and as .an ante-nuptial settlement of the property of the woman, that the intention is to carry the title to the property beyond the period of the wife's death, and to exclude the husband, that intention must prevail, and the Court will give a liberal construction to its language in order to discover and effectuate such intent.

A deed executed in contemplation of marriage conveyed certain property in trust, the grantor to be permitted to take and receive during her life, the net income and profits thereof, to her sole and separate use, full power to dispose of the same by deed or will being reserved, and failing so to do, and dying intestate, the same to be held for her children or their descendants if she left any, if not, for her heirs-at-law. The intended husband was one of the witnesses to the deed, which was placed on record after the marriage. The grantor died intestate without issue, leaving her husband surviving her. HELD :

That the intent of the grantor to carry the title to the property beyond her life and to exclude her husband, was plainly manifest, and he was not entitled to any interest or share therein.

APPEAL from the Circuit Court of Baltimore City.

Two sisters, Eleanor F. and Louisa Victoria Torrance, by the will of their aunt, Louisa Torrance, who died on the 5th of May, 1878, acquired certain property, including a leasehold lot and improvements on north Calvert street. The two sisters, made each a deed of trust to the other, in contemplation of their respective marriages, and each shortly after her deed was executed, married; the former marrying James A. Conner, and the latter

John S. Moody. The deed of Mrs. Moody is set out in the opinion of this Court. Mrs. Moody died intestate and without issue, without having altered or rescinded the deed of trust to her sister, leaving her husband surviving her. After the death of Mrs. Moody, Charles G. Hall and George D. Hall, infants under the age of twenty-one years, owners of one undivided third of the aforesaid lot on Calvert street, by their guardian, Mr. John P. Poe, filed a bill for the sale of said lot for partition among the parties entitled. The bill made Mr. and Mrs. Conner and Mr. Moody parties defendant, and prayed that Mr. Moody who claimed his deceased wife's share in the lot, should in accordance with the true construction of the said deed of trust, be adjudged to have no interest in the property. The answer of the defendant Moody, admitted the title of the complainants as tenants in common with Mrs. Conner and his deceased wife, and that the property in question was incapable of partition, but claimed that under a proper construction of the said deed of trust he was entitled to the whole of the third of his deceased wife. He objected, however, to any decree of sale until his rights had first been adjudicated. The defendants, Mr. and Mrs. Conner, admitted the allegations of the bill, and claimed that the lot on Calvert street was owned, one-half by the female respondent, and the other half by the infant complainants, and insisted that the defendant Moody had no interest whatever therein, and assented to the decree for sale as prayed. The Court (DUFFY, J.) passed a decree for the sale of the property in question, as incapable of partition, adjudging that the defendant Moody had no interest whatever therein, and overruling his claims and pretensions thereto. From this decree the present appeal was taken.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, and RITCHIE, J.

*William S. Bryan, Jr.,* and *John H. Handy,* for the appellant.

The personalty embraced in the deed in question is not affected by the Statute of Uses, 27th Henry VIII, chapter 10. By that statute, uses in personalty are not executed but remain as trusts. The legal estate, therefore, in the personal and leasehold property remains in the trustee.

The *cestui que trust* took an equitable estate for her natural life, with an equitable remainder, expressed to be to her heirs-at-law. According to the leading case, *Horne vs. Lyeth,* 4 *H. & J.,* 431, by force of these limitations, she took the absolute and entire equitable interest in the personalty. It was decided in that case that a limitation in such words as would create an estate tail or an estate in fee simple, if applicable to real estate, would vest the absolute interest in chattels in the grantee. It can no longer be doubted that the words of this deed in the case of real estate, would have conveyed a fee simple. *Simpers' Lessee vs. Simpers,* 15 *Md.,* 160; *Clark vs. Smith,* 49 *Md.,* 106.

As Miss Louisa Victoria Torrance took the absolute equitable interest in the personalty, and afterwards married Moody, when she died, without leaving children, it would naturally follow that the personalty became his absolutely. *Section 2 of Article 45 of the Code.*

It is maintained, in opposition to this result, that the proper construction of the deed excludes Moody from any participation in the property.

The rule laid down in *Carroll vs. Lee,* 3 *G. & J.,* 508, is, that in order to exclude the husband, the language of the deed must show that "he was not to enjoy what the law would otherwise give him," and this rule has always been regarded as the standard.

By the deed of trust it is declared that Miss Torrance, who had the absolute interest in the property, is to hold it to her sole and separate use, and that she may dispose

of it by deed or will; and after the power to devise, we find the words " whether married or single." Now it is quite clear that these words do not enlarge her estate, because it was already absolute and as extensive as it could be. To give the owner of property the right to dispose of it by will or deed is mere supererogation. And it is equally clear that the words do not diminish her rights in her property. They have no effect and could have no effect as long as she remained unmarried. It is supposed, however, that when she married, the words had some effect. Let us see. Compare the language of Article 45, section 2, of the Code, which defines the rights of married women to their property. We find that a married woman holds her property " to her separate use, with power of devising the same as fully as if she were a *féme sole*, or she may convey the same by a joint deed with her husband." If there be any difference between the powers expressed in the deed and those conferred by the statute, it is in the circumstance that the law requires the deed to be made jointly with her husband, whereas the deed simply mentions the right to convey. The difference would simply dispense with the necessity of joining the husband in a deed *inter vivos*, and to this extent would abridge his rights during the life of his wife. But there is no expression in the deed which affects the rights of the husband after the death of the wife.

The limitation to the heirs-at-law of the wife after her death, simply designates the estate which she took under the deed. It did not point out persons who were to take after her death. It did not provide that she was to hold it for her life, and then it was to go to individuals who would be her heirs-at-law. On the contrary the limitation gave to her, immediately, an absolute estate, (*Simpers' Lessee vs. Simpers*, 15 *Md.*, 186;) there was no postponement of an interest until her death, but she took the whole interest at once. As she took the entire interest

*eo instanti* when the deed was executed, and as no disposition was made of the property by will, it must devolve as other intestate property—that is, upon her husband.

It is supposed by the appellees that certain cases in this Court establish that this deed makes a disposition of the property after the wife's death to the exclusion of the husband. It may be remarked that in all cases of this kind the question is whether the deed takes away from the husband the rights which the law gives him. Formerly, the husband had far greater rights in his wife's personalty than he now has. In fact he had the entire interest. It would, therefore, be easy to state cases which formerly would take away rights from the husband when the very same words at the present time would leave them unaffected.

The case of *Waters vs. Tazewell*, 9 *Md.*, 291, construed a deed which, in express terms, provided that the trust estate and property should not at any time be subject to the power, disposal or control of the present or any future husband; and after the wife's death there was an express designation of persons who were to take as purchasers, and the husband was not included in the class.

In *Townshend vs. Matthews*, 10 *Md.*, 251, the property was settled, in contemplation of marriage, to the sole and exclusive use of the wife, her heirs and assigns. The whole interest was secured exclusively to the wife. The controversy related to personalty. By the law, as it stood when the deed was made, the personalty would have belonged exclusively to the husband.

In *Hutchins vs. Dixon*, 11 *Md.*, 29, the husband executed a deed which recited that he wished to invest her with all her property for her exclusive use and benefit as though she were a *féme sole*, and then conveyed the property in trust to be disposed of in any manner the wife should direct during her coverture, and provided that after her death it should descend to her legal heirs

and representatives *in the same manner as if they had never been married.* By the wife's direction the property was conveyed to her "*sole use and benefit,* subject to all the provisions and conditions in the deed of trust," to have and to hold the same unto her for her sole use and benefit during her natural life, and after her death, in case she should not dispose of the same by last will and testament, to her heirs and legal representatives forever; subject, nevertheless, to the *provisions and conditions contained in the said deed of trust.* By the law then existing the personal property would have belonged absolutely to the husband; by the deed it was given to the wife during her life, and after her death to her legal representatives *as if she had never been married.*

In *Ward vs. Thompson,* 6 *G. & J.,* 349, the intention to exclude the husband was most manifest.

And so in every case which has barred the husband, it will be found that it was impossible to give effect to the deed without taking from the husband the rights which the law would have given him.

But in the present case, the deed merely gives the wife an absolute estate, and in perfect consistency with the estate in the wife, the husband can enjoy the rights which the law gives him. It is not contended that the husband can take as heir to the wife, but that the word "heirs" is a word of limitation and not a word of purchase—that it defines the estate taken, and does not designate the individuals who are to take the property.

*Bradley T. Johnson,* and *Geo. Hawkins Williams,* for the appellees.

The intention is to create a separate and exclusive use for the wife, and technical words are unnecessary. *Story's Eq. Jur., sections* 1381, 1382, 1384; *Lewin on Trusts,* 644, *sec.* 3; *Archer vs. Roke,* 7 *Irish Eq.,* 480.

The intention to preserve the property for the separate use, free from marital rights, is further made plain by the

provision that in case of sale by Mrs. Moody under the power in the deed, *the purchaser shall in no event be bound to see to the application of the purchase money.* *Stump vs. Jordan,* 54 *Md.,* 619.

This intention further appears, by the use in the deed, that the *cestui que trust,* Miss Torrance, about to become Mrs. Moody, shall receive the *net* income, issues and profits. The trustee is to pay taxes, repairs and expenses. The management of the trust estate is to be with the trustee. The *cestui que trust* is only to receive *net* results.

The words *sole* and *separate* especially exclude rights of husband in wife's property. *Tyler vs. Lake,* 2 *Russ. & My.,* 188.

The husband was excluded from all right in Victoria's property during her life, and the Maryland cases settle that the use of the words *heirs-at-law* in a deed made in contemplation of marriage, and used in reference to *sole* and *separate* property, continue the exclusion of the husband's pretensions after death. *Tazewell vs. Waters,* 9 *Md.,* 301; *Townshend, Adm'r of Chew vs. Matthews,* 10 *Md.,* 254; *Hutchins vs. Dixon,* 11 *Md.,* 38; *Digest of Law of Husband and Wife,* 38, 39; *Marriage and Divorce,* (STEWART,) *page* 450, *section* 457, and cases cited in notes 8 and 9; also, *page* 463, *section* 466, and case cited in note 3.

MILLER, J., delivered the opinion of the Court.

The only question presented by this appeal is whether the appellant, John S. Moody, is entitled, as surviving husband, to any interest in the estate, real or personal, of his wife, whose maiden name was Louisa Victoria Torrance, and who died on the 19th of March, 1882, intestate, and without leaving children. Her heirs-at-law rely upon the following deed as depriving the husband of all interest in her property:

"This deed, made this seventeenth day of June, in the year eighteen hundred and seventy-eight, by Louisa Vic-

toria Torrance, of the City of Baltimore and State of Maryland: Witnesseth, that in consideration of the sum of five dollars, and for divers other causes and considerations, the said Louisa Victoria Torrance doth grant, bargain and sell, assign and transfer unto Eleanor F. Conner, her heirs and personal representatives and assigns all her estate, real, personal and mixed, of whatsoever kind and wheresoever situate: To have and to hold the same for the following trusts and purposes, to wit: To permit and suffer the said Louisa to take and receive for and during her natural life, the net income, issues and profits thereof, to her sole and separate use, and also to alien, sell, mortgage or incumber the same at her will and pleasure, with full power to devise the same whether married or single, and failing to do so, and dying intestate, then at and after her death to hold the same for the use of her children, or their descendants living at her death, the descendants of any child dying to take the part its or their parent would have taken if living, and if there be no child or descendants of any child living at her death, then to hold the same, to the use of the heirs-at-law of said Victoria; and in the event of any sale of any part of said property by the said Victoria, under the power herein reserved, the purchasers shall, in no event, be bound to see to the application of the purchase money, the said property now consisting of what is set forth in a schedule appended hereto; and that the said Louisa covenants that she will execute such other assurances as may be requisite. Witness her hand and seal.

"Louisa Victoria Torrance. [seal.]
"Test: *John S. Moody,*
*Geo. McCaffray.*"

This deed was duly acknowledged on the day of its date and execution, and was duly recorded on the 20th of December following. The particular property now in con-

troversy is an undivided interest in leasehold property held under a lease for ninety-nine years renewable forever, and this interest the wife acquired under the will of her aunt, Louisa Torrance, who died on the 5th of May, 1878, and it is mentioned in the schedule annexed to the deed.

In order to ascertain the nature and character of this instrument, the Court is not only at liberty, but is bound, to look to the circumstances surrounding and attending its execution, and when this is done we find no difficulty in determining its effect so far as the present controversy is concerned. It was executed by Miss Torrance *only three days* before her marriage with the appellant, who was *one of the witnesses* to it, and it was placed on record some months after the marriage. It deals with her *own property* and disposes of the whole of it. It was, therefore, manifestly a deed executed in contemplation of marriage, and as an ante-nuptial settlement of her property. It is true the intended husband was not a technical or actual party to it, but the inference is irresistible that he knew of its provisions, as well as the purpose for which it was executed, and assented thereto. Now it is clearly settled that whenever it appears from the face of such an instrument that the *intention* is to carry the title to the property beyond the period of the wife's death and to exclude the husband, that intention must prevail, and the Courts will give a liberal construction to its language in order to discover and effectuate such intent. *Ward vs. Thompson*, 6 *G. & J.*, 349; *Waters vs. Tazewell*, 9 *Md.*, 291; *Townshend vs. Matthews*, 10 *Md.*, 251; *Hutchins vs. Dixon*, 11 *Md.*, 29; *Denton vs. Denton*, 17 *Md.*, 403; *Marshall vs. Beall*, 6 *How.*, 70. In some of these cases the provisions of the conveyances are very similar to those in the present deed, while in others the intention to exclude the husband is much less apparent; but the *rule of decision* is the same in all. Applying that rule to this deed, it is mani-

fest that the *intention* of the grantor, who was then about to be married, was to *settle her property* upon herself for life, with full power to dispose of the same by deed or will, and if she did not so dispose of it, and died intestate, then at her death upon her children, if she left any, and if not, then upon her heirs-at-law. The intent to carry the title beyond her life and to exclude her husband is plainly manifest, and, in our opinion, so far as his rights are concerned, that intent is operative and he must be excluded, notwithstanding the *Rule in Shelley's Case* should be held to apply to this deed. We are not to be understood, however, as expressing any opinion whether this rule is applicable or not. The case does not require a decision of that question. Nor is the case, in our judgment, affected by the fact that this deed was executed since the passage of laws which have given to married women greater power and control over their property than they formerly had, and taken away from husbands the rights which the common law gave them.

<div align="right">

*Decree affirmed, and*
*cause remanded.*